TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-324 |
| of | : | |
| | : | November 17, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE STATE BOARD OF EQUALIZATION has requested an opinion on the following questions with respect to when a majority of the members of the State Board of Equalization are prohibited from participating in the making of a governmental decision:

1.      May a sufficient number of disqualified members be brought back to establish a quorum through a process of selection by lot?

2.      If so, what form should the process of selection by lot take?

3.      In addition to selection by lot, what other means of random selection or other impartial and equitable means of selection may be used?

4.      Must all disqualified members participate in the selection process whether by lot, other means of random selection, or by other impartial and equitable means of selection?

5.      When is a disqualified member's participation in the making of a decision legally required regarding the Board's statutory and constitutional duties?

6.      What options, such as postponement, are available besides selecting a disqualified member to participate in the decision?

## CONCLUSIONS

When a majority of the members of the State Board of Equalization are prohibited from participating in the making of a governmental decision:

1.      A sufficient number of disqualified members may be brought back to establish a quorum through a process of selection by lot.

2.      The process of selection by lot may take any form that results in a random selection of an object representing a disqualified member, where each such member is represented by a different object.

3.      In addition to selection by lot, other means of random selection include such activities as flipping coins, drawing cards, and throwing dice or having the members take turns based upon a predetermined order, and other impartial and equitable means of selection include making a qualitative evaluation of the particular interests involved.

4.      All disqualified members must participate in the selection process whether by lot, other means of random selection, or other impartial or equitable means of selection.

5.      A disqualified member's participation is legally required when his presence is necessary to establish a quorum with respect to the matter regardless of whether the Board's duties in question are statutory or constitutional.

6.      The members may postpone the decision regarding the matter depending upon the individual circumstances involved.

## ANALYSIS

Government Code section 15676[1] provides:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Prior to rendering any decision in any adjudicatory proceeding pending before the State Board of Equalization, each member who knows or has reason to know

---

[1]All references hereafter to the Government Code are by section number only.

that he or she received a contribution or contributions within the preceding 12 months in an aggregate amount of two hundred fifty dollars ($250) or more from a party or his or her agent, or from any participant or his or her agent, shall disclose that fact on the record of the proceeding.

"(c) No member shall make, participate in making, or in any way attempt to use his or her official position to influence, the decision in any adjudicatory proceeding pending before the board if the member knows or has reason to know that he or she received a contribution or contributions in an aggregate amount of two hundred fifty dollars ($250) or more within the preceding 12 months from a party or his or her agent, or from any participant or his or her agent, and if the member knows or has reason to know that the participant has a financial interest in the decision, as that term is used in Article I (commencing with Section 87100) of Chapter 7 of Title 9.

"(d) Notwithstanding subdivision (c), if a member receives a contribution which would otherwise require disqualification under subdivision (c), and he or she returns the contribution within 30 days from the time he or she knows, or has reason to know, about the contribution and the adjudicatory proceeding pending before the board, his or her participation in the proceeding shall be deemed lawful.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(i)(1) Any person who knowingly or willfully violates any provision of this section is guilty of a misdemeanor.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(5) This section shall not prevent any member of the board from making, or participating in making, a governmental decision to the extent that the member's participation is legally required for the action or decision to be made. However, the fact that a member's vote is needed to break a tie does not make the member's participation legally required."[2]

The State Board of Equalization ("Board") has implemented section 15626 by adopting specific administrative regulations. (Cal. Code Regs., tit. 18, §§ 7001-7011.)[3] Subdivisions (c) and (d) of Regulation 7008 provide:

---

[2]"Article 1 (commencing with Section 87100) of Chapter 7 of Title 9" refers to the Political Reform Act of 1974 (§§ 81000-91015).

[3]All references hereafter to title 18 of the California Code of Regulations are by regulation number only.

"(c) Nothing in this section shall prevent any member of the board from making, or participating in making, a governmental decision to the extent that the member's participation is legally required for the action or decision to be made. However, the fact that a member's vote is needed to break a tie does not make the member's participation legally required.

"(d) In the event a board member's participation is legally required for the action or decision to be made, the board may bring back as many disqualified members as is necessary to establish a quorum. The preferred means of selecting which disqualified member should participate is by lot. Other means of random selection or other impartial and equitable means of selection may also be used."

The six questions presented for resolution concern the application of section 15626 and Regulation 7008 when a majority of Board members are prohibited from participating in the making of a governmental decision.

Before analyzing each question individually, we note that section 15626 and Regulation 7008 set forth a variation of the common law rule known as the "doctrine of necessity." This rule was explained in *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 321-323, as follows:

"The rule of necessity provides that a governmental agency may acquire essential goods or services despite a conflict of interest, and in nonprocurement situations it permits a public officer to carry out the essential duties of his/her office despite a conflict of interest where he/she is the only one who may legally act. The rule ensures that essential government functions are performed even where a conflict of interest exists. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 537 [`[A] judge is not disqualified from adjudicating a cause because of personal financial interest if there is no other judge or court available to hear and resolve the cause.']; *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 366-367; *Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 404 [`The rule is well settled that where an administrative body has a duty to act upon a matter which is before it and is the only entity capable to act in the matter, the fact that the members may have a personal interest in the result of the action taken does not disqualify them to perform their duty. It is a rule of necessity which has been followed consistently.']; 70 Ops.Cal.Atty.Gen. 45, 48 (1987).)

"The rule of necessity has been codified in section 87101 of the Political Reform Act of 1974 and implemented by California Code of Regulations, title 2, section 18701.

"Construing these provisions, the Fair Political Practices Commission, the administrative body established by the act to interpret and enforce its provisions, has held that if a board cannot, as a result of board member disqualification, obtain a quorum in order to make a decision it is legally required to make, the board may bring back as many disqualified members as is necessary to establish a quorum. The

preferred means of selecting which disqualified member or members should participate is by lot or other means of random selection. However, nothing in the act prevents the use of other impartial and equitable means of selection. (*Matter of Hudson* (1978) 4 FPPC Ops. 13)." (Fn. omitted.)

We have applied the doctrine of necessity in a variety of contexts. (See, e.g., 73 Ops.Cal.Atty.Gen. 191 (1990); 69 Ops.Cal.Atty.Gen. 102 (1986); 67 Ops.Cal.Atty.Gen. 369 (1984); 65 Ops.Cal.Atty.Gen. 305 (1982); 61 Ops.Cal.Atty.Gen. 243 (1978).)

### 1. Establishing A Quorum By Lot

The first question concerns whether a sufficient number of disqualified members of the Board may be brought back to establish a quorum through a process of selection by lot when a majority of the members are prohibited from participating in the decision. We conclude that such a process of selection is permissible.

Subdivision (d) of Regulation 7008 allows for a process of selection by lot to establish a quorum in the precise circumstances under consideration. In light of subdivision (i)(5) of section 15626, we find nothing in Regulation 7008 that would be inconsistent with the statutory controls placed upon the Board by the Legislature. (See *People* v. *Wright* (1982) 30 Cal.3d 705, 712-713; *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679; *Mission Community Hospital* v. *Kizer* (1993) 13 Cal.App.4th 1683, 1691.)[4]

Furthermore, the common law rule would permit *all* disqualified members to remain and participate in the Board's decision. (See *Gonsalves* v. *City of Dairy Valley*, (1968) 265 Cal.App.2d 400, 404.) Accordingly, the Board's regulation, which is more restrictive than the common law rule, would also be proper. (*Cf. Eldridge* v. *Sierra View Local Hospital Dist.*, *supra*, 224 Cal.App.3d at 321-323; 61 Ops.Cal.Atty.Gen., *supra*, 252-254.)

We conclude in answer to the first question that when a majority of the members of the Board are prohibited from participating in the making of a governmental decision, a sufficient number of disqualified members may be brought back to establish a quorum through a process of selection by lot.

### 2. The Process of Selection By Lot

The second question concerns the methods that may be adopted for choosing disqualified members by lot. We conclude that any form may be adopted that results in a random selection made from objects representing the disqualified members.

In interpreting the "by lot" language of Regulation 7008, we note that the same rules of interpretation apply to administrative regulations as apply to statutes. (*Cal. Drive-in Restaurant Assoc.*

---

[4]The Language of subdivision (i)(5) of section 15626 is more fully analyzed below in answer to the fifth question.

v. *Clark* (1943) 22 Cal.2d 287, 292;  *Duke Molner Wholesale etc. Liquor Co*. v. *Martin* (1960) 180 Cal.App.2d 873, 884.)   Accordingly, "[t]he aim of such construction is to determine the legislative intent so that the purpose of the statute or the regulation promulgated pursuant to the statute may be given effect.  [Citations.]"  (*Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1008.)  "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'"  (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.)

The term "lot" in this context commonly means "an object (as a piece of wood, pebble, die, straw) used as one of the counters in determining a question by the chance fall or choice of one or more of them . . . ."  (Webster's Third New Internat. Dict. (1971) p. 1338.)  The key element of a selection by lot is that the determination is randomly produced "by the chance fall or choice of one."  We construe Regulation 7008 in light of this definitional language expressing the plain meaning of its terms.

Hence, we believe that each disqualified Board member must be assigned some object or "lot," and a drawing held with predetermined rules as to how such members are to be chosen for participation or how they are to be eliminated from participation.  It may be accomplished in a single drawing or in a number of drawings.

We conclude that when a majority of Board members are prohibited from participating in the making of a governmental decision, the process of selection by lot may take any form that results in a random selection made from objects representing each disqualified member.

3.      Other Means of Random Selection and Other Impartial and Equitable Means of Selection

The third question to be resolved concerns the means for selecting disqualified members other than by lot when it is necessary for the Board to act and a majority of members have been disqualified.  We conclude that various activities may be undertaken for selecting disqualified members other than by lot.

Subdivision (d) of Regulation 7008 indicates that while the "preferred" method of selecting disqualified members is by lot, "[o]thers means of random selection or other impartial and equitable means of selection may also be used."  Under this broadly worded grant of authority, the Board may exercise its discretion in a number of ways.

Commonly accepted means of random selection other than by lot include flipping coins, drawing cards, and rolling dice.  Any number of similar activities would be appropriate as long as the rules were determined in advance to produce a random selection.  The members may, for example, take turns in a predetermined order.

As for "other impartial and equitable means," we believe that disqualified Board members may be selected based upon a qualitative analysis of the conflicting interests involved.  As an example:  three members are disqualified, and one must participate to allow the Board to act; one of the three was given a $250 contribution 11 months ago, while the other two were each given a $20,000

contribution last month. The first may be allowed to participate based upon an "impartial and equitable" evaluation of the conflicting interests involved.

We conclude that when a majority of Board members are prohibited from participating in the making of a governmental decision, means of random selection of disqualified members other than by lot include such activities as flipping coins, drawing cards, and throwing dice, or having the members take turns in a predetermined order, and other impartial and equitable means of selection include making a qualitative evaluation of the particular interests involved.

### 4. Participating in the Selection Process

When a majority of Board members are disqualified from participating in a decision, must each of the disqualified members participate in the selection process? We conclude that each disqualified member must participate in the selection process.

Subdivision (d) of Regulation 7008 states that "the board may bring back as many disqualified members as is necessary to establish a quorum." Following the rules of construction previously cited for the interpretation of administrative regulations, we believe that subdivision (d) requires all disqualified members to be subject to the selection process. Nothing in the regulation's language suggests that a disqualified member may choose not to participate or be excluded by some other means prior to initiating the selection process. The use of lots, other means of random selection, or other impartial and equitable means of selection must apply equally to each disqualified member to ensure a lack of bias in the selection process. Removing members before the selection begins would change and reduce the "randomness" and "impartiality" of the selection process. We interpret Regulation 7008 in a reasonable manner consistent with its purpose. (See *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 987; *Boam* v. *Trident Financial Corp.* (1992) 6 Cal.App.4th 738, 743.)

In answer to the fourth question, we conclude that when a majority of Board members are prohibited from participating in the making of a governmental decision, each disqualified member must participate in the selection process, whether by lot, other means of random selection, or by other impartial and equitable means of selection.

### 5. Participation That Is Legally Required

All of the prior questions and conclusions have been predicated upon choosing a disqualified Board member to participate in a governmental decision because "the member's participation is legally required for the action or decision to be made." (§ 15676, subd. (i)(5).) If participation is not legally required, then the general prohibition of section 15676 precludes any participation by a disqualified member. What are the circumstances under which a disqualified member's participation is "legally required"?

Nothing in Regulation 7008 or in any other of the Board's regulations describes when a disqualified Board member's participation would be legally required. However, section 15676 is

plainly patterned after section 87101[5] contained in the Political Reform Act of 1974, to which section 15676 refers (§ 15676, subd. (c)), and section 87101 has been interpreted by the Fair Political Practices Commission in administering the act. We believe that the commission's interpretation may be equally applied to section 15676. (See *In re Phyle* (1947) 30 Cal.2d 838, 845; *Dieckmann* v. *Superior Court* (1985) 175 Cal.App.3d 345, 356; *In re Marriage of Pinto* (1972) 28 Cal.App.3d 86, 89.) Accordingly, section 18701 of title 2 of the California Code of Regulations states as follows:

"(a) A public official is not legally required to make or to participate in the making of a governmental decision within the meaning of Government Code Section 87101 unless there exists no alternative source of decision consistent with the purposes and terms of the statute authorizing the decision.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) This regulation shall be construed narrowly, and shall:

"(1) Not be construed to permit an official who is otherwise disqualified under Government Code section 87100, to vote to break a tie.

"(2) Not be construed to allow a member of any public agency, who is otherwise disqualified under Government Code section 87100, to vote if a quorum can be convened of other members of the agency who are not disqualified under Government Code section 87100, whether or not such other members are actually present at the time of the disqualification."

In the situation presented for analysis, a majority of Board members are disqualified to vote on a matter. Thus a quorum cannot be convened of members who are not disqualified whether present at the meeting or not. Assuming all Board members to be present,[6] when is the participation of a disqualified member or members legally required?

---

[5]Section 87101 provides:

"Section 87100 does not prevent any public official from making or participating in the making of a governmental decision to the extent his participation is legally required for the action or decision to be made. The fact that an official's vote is needed to break a tie does not make his participation legally required for purposes of this section."

Section 87100 states in turn:

"No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

[6]The Board "consists of 5 voting members: The Controller and 4 members elected for 4-year terms . . . ." (Cal. Const., art. XIII, § 17.)

In 75 Ops.Cal.Atty.Gen. 47, 49, footnote 2 (1992), we observed:

"A `quorum' is the minimum number of members of a body who must be present to transact business legally. Almost always, a quorum consists of a majority (more than half) of the body's existing membership. [Citation.] For example, a city council with seven members would have a quorum to transact business at its meeting when four members are present and entitled to vote."

In 62 Ops.Cal.Atty.Gen. 698, 699-700 (1979), we stated:

"Without the presence of a `quorum,' a deliberative body cannot transact business other than to (1) fix the time to which to adjourn, (2) adjourn, (3) recess, or (4) take measures to obtain a quorum. [Citations.]

"A quorum is the minimum number of members who must be present at a meeting for business to be legally transacted. [Citations.] A quorum refers to the number of members present, not to the number of members actually voting on a particular question; however, the quorum members must be *entitled* to vote. [Citations.]

"A quorum consists of a majority (more than half) of the existing membership of the body. [Citations.] . . . ." (Fn. omitted.)

In our 1979 opinion, we specifically pointed out:

"A member who is not entitled to vote because of a conflict of interest, for example, is not counted for purposes of establishing a quorum on a particular question. [Citations.] Special rules are applicable where a quorum cannot be formed due to conflicts of interest. [Citations.] . . . ." (*Id.*, at p. 700, fn. 2.)

In 61 Ops.Cal.Atty.Gen. 243, 252 (1978), we noted that "[i]n the absence of a contrary statutory provision, the number of votes required to sustain the action by a collective body is a majority of a quorum." (See *People* v. *Harington* (1883) 63 Cal. 257, 260; *Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611, 620; *Martin* v. *Ballinger* (1938) 25 Cal.App.2d 435, 436-437.)

Here, we have a majority of Board members who are disqualified from voting on a particular matter. Sufficient number of disqualified members must be chosen to allow the presence of a quorum so that the Board may act; no other agency may act on behalf of the Board. The disqualified member or members chosen to convene the quorum are authorized to "participat[e] in making, a governmental decision" (§ 15676, subd. (i)(5)), i.e., to vote on the matter.[7]

---

[7]In 61 Ops.Cal.Atty.Gen., *supra*, at 254, we concluded that under the terms of section 87101, the disqualified official chosen could not vote. We now find that conclusion to be inconsistent with the language of section 87101 and the subsequent administrative construction of section 87101 by the Fair Political Practices Commission, and it is hereby

Of course, if a quorum of those entitled to vote, i.e., disinterested members, is present, no disqualified member may be brought back to participate in the decision. Thus, if the disinterested members cast votes resulting in a tie, a disqualified member may not vote to break the tie. (§ 15626, subd. (i)(5); Reg. 7008, subd. (c); see § 87101; Cal. Code Regs., tit. 2, § 18701, subd. (c)(1).)

Finally, the application of the rule of necessity as expressed in section 15626 and Regulation 7008 is identical for the Board's constitutionally mandated duties and statutorily mandated duties. The purpose of the rule is to permit an official "to carry out the essential duties of his/her office despite a conflict of interest where he/she is the only one who may legally act." (*Eldridge* v. *Sierra View Local Hospital Dist.*, *supra*, 224 Cal.App.3d at 321.) The legal source of the "essential duty," constitutional or statutory, is immaterial.

We conclude that when a quorum of Board members entitled to vote cannot be convened on a particular matter, a disqualified Board member's participation is legally required to establish a quorum so that the Board may perform its statutory or constitutional duties.

6.      Postponing the Decision

The final question concerns other options that may be available for making a governmental decision when a majority of Board members are disqualified from voting on a matter. For example, may the Board postpone the decision until the disqualifying interest has terminated under the provisions of section 15626?

First, we believe that nothing would require the Board to postpone the performance of its duties. The purpose of the rule of necessity is to permit an official or board to act despite conflicts of interest. As stated in subdivision (i)(5) of section 15626:

"This section shall not prevent any member of the board from making, or participating in making, a governmental decision to the extent that the member's participation is legally required . . . ."

No time frame is included in the statutory language. The proviso would permit the Board to conduct its business "in due course" without postponement.

It would accordingly follow that duties which *must* be performed within specified time limits (and before the expiration of the 12-month disqualification period of section 15626) may *not* be postponed. As to the postponement of other matters, such a determination would fall within the discretion of the Board. However, postponement in some cases may constitute an abuse of discretion. The possible detriment to the general public of having otherwise disqualified Board members

---

disapproved. Although the court in *Hamilton* v. *Town of Los Gatos* (1989) 213 Cal.App.3d 1050, 1057-1058, discussed our 1978 opinion and found it "persuasive," it was not considering whether a disqualified official could vote, and it also found "persuasive" an opinion of the Fair Political Practices Commission which allowed the disqualified official to vote.

participating in governmental decisions must be weighed against the right of an individual to have the Board timely perform its duties with respect to a particular matter.

We conclude in answer to the sixth question that depending upon the individual circumstances, the Board may postpone a decision when a majority of members are prohibited from participating in the decision.

* * * * *