# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CLINT CUSHING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N25C-04-299 KMM |
| | ) | CCLD |
| JEFF HOLOWATY, an individual, | ) | |
| KELLY HOLOWATY, an individual, and | ) | |
| GREENMARBLES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 30, 2025
Decided: December 11, 2025

*Defendants' Partial Motion to Dismiss –* **GRANTED**, in part, **DENIED**, in part.

## <u>MEMORANDUM OPINION AND ORDER</u>

Alexandra D. Roggin, Paul S. Seward (argued), ECKERT SEAMANS CHERIN & MELLOT, LLC, Wilmington, Delaware; Ryan B. Hancey, KESLER RUST, Salt Lake City, Utah, *Attorneys for Plaintiff Clint Cushing*.

Joseph B. Cicero, Ryan M. Lindsay (argued), Dakota B. Eckenrode, Samantha Callejas, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Paul M. Teinert, Brendan M. Loper, ROSS WOLCOTT TEINERT & PROUT LLP, Costa Mesa, California, *Attorneys for Defendants Jeff Holowaty, Kelly Holowaty, and GreenMarbles, LLC*.

**Miller, J.**

# I.     INTRODUCTION

This dispute arises from an equity purchase transaction whereby Defendant GreenMarbles, LLC ("GreenMarbles") acquired several entities (the "Nomo Entities")[1] then owned by Plaintiff in exchange for a five percent interest in GreenMarbles. At center of this dispute are Plaintiff's allegations that Jeff and Kelly Holowaty (the "Holowatys"), respectively the chief financial officer ("CFO") and chief executive officer ("CEO") of GreenMarbles, defrauded Plaintiff by intentionally and repeatedly representing to him an inflated value of GreenMarbles (resulting in a lower ownership percentage for Plaintiff) while simultaneously negotiating (and then closing) another equity purchase transaction based on a significantly lower valuation of GreenMarbles.

The Amended Complaint asserts six counts, four of which are at issue in Defendants' partial motion to dismiss (the "Motion"). Under Rule 12(b)(1) and Rule 12(b)(6), Defendants seek dismissal of Count V (declaratory judgment), arguing that the court lacks subject matter jurisdiction because it explicitly seeks specific performance, an equitable remedy. As Defendants asserted when this case was first filed in the Court of Chancery, the court must look beyond the words of the Amended Complaint and identify the relief the plaintiff is seeking to determine whether

---

[1] The Nomo Entities are comprised of: NOMO HUB, LLC; NOMO ENERGY HUB, LLC; NOMO PROS, LLC; NOMO ENERGY, LLC; and PROXI, LLC.

jurisdiction exists.  The Court finds Plaintiff is seeking monetary damages, a legal remedy squarely within this court's jurisdiction.  The declaratory judgment count, however, is duplicative of Plaintiff's adequately pled and unchallenged fraud count. Therefore, Defendants' Rule 12(b)(1) Motion is **DENIED**, but their Rule 12(b)(6) Motion as to Count V is **GRANTED**.

Defendants move under Rule 12(b)(6) to dismiss Count III (civil conspiracy) and Count IV (aiding and abetting fraud) because, as officers of GreenMarbles, the Holowatys cannot conspire with, or aid and abet, GreenMarbles in the commission of a tort.  While the Amended Complaint makes allegations of the Holowatys extracting a personal benefit from the alleged fraud, it fails to provide factual support for these conclusory allegations.  Accordingly, as to Count III and Count IV, the Motion is **GRANTED**.

Finally, Defendants seek dismissal of Count I, which asserts a claim for securities fraud under the California Corporate Code.  The applicable statute eases a plaintiff's burden in proving a securities fraud claim, but limits the available remedies.  Plaintiff seeks monetary damages, but because he possesses the membership interests, his only remedy under the statute is rescission; relief he did not request.  Therefore, Defendants' Motion as to Count I is **GRANTED**.

3

Plaintiff requests leave to amend. This court grants amendments liberally, to encourage the disposition of litigation on the merits, provided the opposing party will not suffer serious prejudice. Here, Defendants will not suffer such prejudice. Accordingly, leave to amend is **GRANTED**.

## II.    FACTUAL BACKGROUND[2]

### A.    *The parties*

Prior to the transaction at issue, Plaintiff Clint Cushing owned 100% of the equity of the Nomo Entities.

Kelly Holowaty is GreenMarbles' CEO and Jeff Holowaty is its CFO[3] (collectively with GreenMarbles, the "Defendants").[4] The Holowatys are member-managers of GreenMarbles and responsible for its day-to-day operations.[5]

### B.    *The Nomo Transaction*

In October 2021, Plaintiff and Defendants began negotiating for GreenMarbles' purchase of all of Plaintiff's ownership interest in the Nomo Entities,[6] in exchange for a five percent interest in GreenMarbles.[7] In May 2022, the

---

[2] The facts are derived from the allegations in the amended complaint. D.I. 2 ("Am. Compl.").
[3] Am. Compl. ¶¶ 4, 7.
[4] *Id.* ¶¶ 1–4.
[5] *Id.* ¶¶ 5–7.
[6] *Id.* ¶ 9.
[7] *Id.* ¶¶ 13–15, 18–19, 20, 22, 24.

parties closed on those terms—the Nomo Entities for a five percent stake in GreenMarbles (the "Nomo Transaction").[8]

## C.    *GreenMarbles' valuations and the Gentex Transaction*

Throughout negotiations with Plaintiff, the Holowatys repeatedly represented that the Nomo Entities had a value of $10,000,000 and "based on various independent valuations," GreenMarbles had a value of at least $200,000,000.[9] Based on these valuations, the parties negotiated Plaintiff's five percent stake in GreenMarbles.[10]

---

[8] Am. Compl. ¶ 27.

[9] *Id.* ¶ 15.  On October 13, 2021, Kelly Holowaty emailed Plaintiff stating "GreenMarbles would purchase [the] Nomo [Entities] 'in exchange for 5% ownership of GreenMarbles.'" *Id.* ¶ 13. During a meeting soon thereafter, Kelly Holowaty stated GreenMarbles valued the Nomo Entities at $10,000,000, and GreenMarbles valued itself at $200,000,000 "based on independent valuations." *Id.* ¶ 14.  On December 3, 2021, Plaintiff met with the Holowatys, during which they reiterated that the 5% interest in GreenMarbles would be worth $10,000,000 based on GreenMarbles' $200,000,000 valuation. Am. Compl. ¶ 18. On December 22, 2021, Kelly Holowaty, over a Zoom meeting with Plaintiff, stated again that GreenMarbles was valued at $200,000,000. *Id.* 19.  On January 18, 2022, Plaintiff met the Holowatys in California, where they again stated that Plaintiff would receive the equivalent of $10,000,000 based upon GreenMarbles' $200,000,000 valuation. *Id.* ¶ 20. During a January 28, 2022, phone conversation Jeff Holowaty assured Plaintiff that GreenMarbles had a $200,000,000 value based on various independent valuations, and that a 5% membership interest Plaintiff would receive was worth $10,000,000. *Id.* ¶¶ 21–22.  At an early February 2022 meeting, the Holowatys told Plaintiff that based on multiple independent valuations GreenMarbles was worth $200,000,000. *Id.* ¶¶ 23.  In April 2022, the Holowatys again stated that the 5% interest Plaintiff would receive would be worth $10,000,000 based on GreenMarbles' $200,000,000 valuation. *Id.* ¶ 24.  On May 3, 2022, Jeff Holowaty stated that Plaintiff's offered membership stake in GreenMarbles was valued $10,000,000.  *Id.* ¶ 25. Finally, during a meeting to finalize the terms, the Holowatys told Plaintiff that GreenMarbles was valued at $200,000,000 and that the 5% membership interest Plaintiff would receive would be worth $10,000,000. *Id.* ¶ 26.

[10] *Id.* ¶¶ 14–15, 18–20, 22, 24–26.  The Nomo Transaction closed in May 2022 and Plaintiff transferred the Nomo Entities' equity to GreenMarbles, in exchange for 580,720 units in GreenMarbles, valued a $17.22 per unit. *Id.* ¶ 27. This value equals $9,999,998.40.

While the Holowatys were negotiating the Nomo Transaction with Plaintiff, they were actively engaged in negotiations of an equity purchase transaction with Gentex Corporation ("Gentex"), a GreenMarbles customer.[11] Throughout the Gentex negotiations, the Holowatys represented the value of GreenMarbles to be only $125,000,000.[12] Using that valuation, Gentex acquired a 20% interest in GreenMarbles for $25,000,000 (the "Gentex Transaction").[13] The Gentex Transaction closed just days after the Nomo Transaction.[14] The Gentex Transaction "immediately, significantly, and intentionally diluted" Plaintiff's interest in GreenMarbles and the $10,000,000 value that the Holowatys had represented to him.[15]

At no point during their months-long negotiations did the Holowatys inform Plaintiff of the simultaneous negotiations with Gentex, or the simultaneous use of a vastly different valuation of GreenMarbles.[16] Had Plaintiff known of the Gentex negotiations, he would not have closed on the Nomo Transaction.[17]

---

[11] *Id.* ¶ 30.
[12] *Id.* ¶ 31.
[13] *Id.* ¶ 31.
[14] *Id.* ¶ 32.
[15] *Id.* ¶ 32.
[16] *Id.* ¶ 33.
[17] *Id.* ¶ 34.

**D.** *Procedural history*

Plaintiff initially filed his complaint in the Court of Chancery. There, as here, the declaratory judgment claim sought "specific performance," finding that Plaintiff is entitled to $10 million. Defendants moved to dismiss because, among other reasons, that court lacked jurisdiction as Plaintiff was actually seeking money damages. Defendants argued that the Court of Chancery "should look beyond the nominal request for specific performance, to the actual relief being sought, and dismiss for lack of equitable jurisdiction."[18]

After the opening brief was filed, the parties stipulated to transfer the case to this court. Plaintiff then filed his Amended Complaint,[19] asserting; securities fraud under California law (Count I);[20] fraud, fraudulent omission/concealment, and fraudulent inducement (Count II);[21] civil conspiracy (Count III);[22] aiding and abetting fraud (Count IV);[23] declaratory judgment (Count V);[24] and unjust enrichment (Count VI).[25]

---

[18] D.I. 9 (Answering Brief ("AB")), Ex. 4 (Defendants' opening brief in Court of Chancery) at 9.
[19] Am. Compl.
[20] *Id.* ¶¶ 40–51.
[21] *Id.* ¶¶ 52–62.
[22] *Id.* ¶¶ 63–75.
[23] *Id.* ¶¶ 76–86.
[24] *Id.* ¶¶ 87–90.
[25] *Id.* ¶¶ 91–99.

Defendants responded with the Motion, seeking to dismiss Counts I and III to V.[26]

## III. THE PARTIES' CONTENTIONS

Because the declaratory judgment claim still contains a request for specific performance, Defendants argue that this court lacks jurisdiction and the claim should be dismissed. Defendants further argue that the declaratory judgment claim is duplicative of the fraud claim and therefore must be dismissed.

Defendants contend that the civil conspiracy and aiding and abetting fraud claims must be dismissed because as officers of the company, the Holowatys cannot be personally liable for the entity's alleged fraud.

Finally, Defendants contend that Plaintiff lacks standing to assert a claim under the California securities fraud statute because he is seeking relief not available to him under that statute.

Plaintiff argues that, just as Defendants contended in the Court of Chancery, the court must look to the actual relief he is seeking, which is money damages, not specific performance. Therefore, the court has jurisdiction.

Plaintiff further argues that the requested declaration is premised on a contractual agreement entered into by the parties, and therefore, it is not duplicative. He contends that he has adequately pled the conspiracy and aiding and abetting

---

[26] D.I. 7 ("Mot.")

claims and the relief requested in the securities fraud claim is permissible under California law.

## IV. STANDARD OF REVIEW

In considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), "the Court 'need not accept [the plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint.'"[27]  Accordingly, the movant "need only show that the Court lacks jurisdiction, whereas the non-movant bears the far more demanding burden to prove jurisdiction exists."[28]

Upon a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the governing pleading standard is reasonable conceivability.[29]  Accordingly, the court must "'deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances.'"[30]  At the pleading stage, Delaware courts afford a liberal construction.[31]  The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party.[32]  The court,

---

[27] *In re Proton Pump Inhibitors Products Liab. Litig.*, 2023 WL 5165406, at *5 (Del. Super. Aug. 11, 2023) (quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007)).

[28] *Acme Markets, Inc. v. Oekos Kirkwood, LLC*, 2025 WL 2172302, at *3 (Del. Super. July 31, 2025) (internal quotations and citations omitted).

[29] *Delaware Human and Civil Rights Comm'n v. Welch*, 2025 WL 2222967, at *4 (Del. Super. Aug. 5, 2025).

[30] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.2d 531, 537 (Del. 2011)).

[31] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan 13, 2021).

[32] *Id.* at *5.

9

however, does not accept conclusory allegations that lack supporting factual allegations.[33]

## V.    ANALYSIS

### A.    *Subject matter jurisdiction over the declaratory judgment claim exists, but it is duplicative of another count and therefore must be dismissed.*

Count V seeks declaratory judgment "for specific performance, finding that [the Plaintiff] is entitled to return his interest in GreenMarbles in exchange for GreenMarbles paying him $10,000,000."[34]  "In considering whether [a party's] claims are equitable in nature the Court must look beyond the form of pleading and 'focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing their claim.'"[35]  Defendants recognized this principle when litigating in the Court of Chancery in asserting the count sought monetary damages, but take a directly contrary position in this court.  Now, according to Defendants, the declaratory judgment count is asserting equitable relief outside this court's jurisdiction.[36]

---

[33] *Id.* at *6.

[34] Am. Compl. ¶ 88.

[35] *Sun Life Assurance Co. of Canada – U.S. Operations Holdings., Inc. v. GP One Thousand One, LLC*, 206 A.3d 261, 270 (Del. Super. 2019) (quoting *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)).

[36] To his credit, when Defendants' counsel was pressed on this point by the Court, he agreed that the Court is required to look beyond the words used in the pleadings to determine the relief the plaintiff is seeking and that Plaintiff's claim had not changed since the transfer from the Court of Chancery.

At oral argument, Plaintiff admitted that the Amended Complaint could have been drafted more artfully, but asserted that the fact remains, he is seeking monetary damages.

It is clear that Plaintiff is seeking monetary damages.[37] Accordingly, Defendants' Motion for lack of subject matter jurisdiction is DENIED.

Establishing jurisdiction, however, does not save Plaintiff's declaratory judgment claim. A declaratory judgment "is a statutory action…meant to provide relief in situations where a claim is ripe but would not support an action under common-law pleading rules."[38] "[T]here is no need for a declaratory judgment where a claimant has recourse to the common law."[39] Therefore, "where a claimant merely has repackaged in the language of a declaration an adequately-pleaded affirmative count, the declaration is duplicative and not viable."[40]

Here, Plaintiff asserts an unchallenged (at this stage) common law fraud claim in Count II. The fraud claim alleges that as a "result of [Defendants']

---

[37] Am. Compl. ¶ 88; *see Agahi v. Kelly*, 2024 WL 1134048, at *5 (Del. Super. Mar. 15, 2024) ("As a general matter monetary damages are legal, not equitable, form or relief.").

[38] *Blue Cube Spinco LLC v. Dow Chemical Co.*, 2021 WL 4453460, at *15 (Del. Super. Sept. 29, 2021).

[39] *Columbus US Inc. v. Enavate SMB, LLC*, 2024 WL 5274569, at *17 (Del. Super. Dec. 23, 2024); *Blue Cube Spinco LLC,* 2021 WL 4453460, at *15 (explaining that a claim for declaratory judgment is duplicative if it is not sufficiently distinct from the affirmative counts in the complaint "such that a decision on the affirmative counts would not resolve the declaratory count.").

[40] *Id.* ("[T]o survive dismissal, a declaratory count must be 'distinct' from the affirmative counts in the complaint such that a decision on the affirmative counts would not resolve the declaratory count.").

misrepresentations and omissions, [Plaintiff] has been damaged, including but not limited to, giving up his Nomo interests in exchange for devalued or imminently to be devalued shares in GreenMarbles" and "[a]s such [Plaintiff] has given up his interests without appropriate compensation."[41] Plaintiff's declaratory judgment claim (Count V) seeks an award of $10 million, but asserts no basis for the Court to make such a declaration. When the Amended Complaint is viewed as a whole, the declaratory judgment claim asserts the same claim as the fraud claim—damages as a result of Defendants' alleged fraudulent conduct. Thus, the declaratory judgment claim is duplicative of the fraud claim.

In an effort to save the declaratory judgment claim, Plaintiff asserts in his answering brief that this claim revolves around the parties' subscription agreement (the "Subscription Agreement") entered into as part of the Nomo Transaction.[42] Plaintiff argues that declaratory relief is appropriate because "[Plaintiff] seeks a declaration from this Court that he is entitled to the $10 Million he was promised in Section 1 of the Subscription Agreement."[43] However, there is no mention of the Subscription Agreement in the Amended Complaint. A party cannot amend his

---

[41] Am. Compl. ¶ 62.
[42] AB at 24.
[43] *Id.*

pleading through briefing a motion to dismiss.[44] Thus, this argument is not properly raised.

The declaratory judgment claim (Count V) is DISMISSED.[45]

**B.** ***The civil conspiracy and aiding and abetting claims fail.***

Plaintiff alleges the Holowatys conspired[46] and aided and abetted[47] in GreenMarbles' fraud. Generally, officers and agents cannot conspire with their principal or each other.[48] "And like civil conspiracy, officers and agents cannot aid and abet their principal or each other in the commission of the tort."[49] Thus, corporate officers cannot be personally liable for the acts they take on behalf of their corporate-principal. But a limited exception exists, under which corporate officers may be personally liable when they step out of their corporate roles and act on personal motives.[50] The exception is narrowly drawn.[51] The corporate officer must

---

[44] *Light Years Ahead, Inc. v. Valve Acquisition, LLC,* 2021 WL 6068215, at *12 (Del. Super. Dec. 22, 2021) ("Delaware law is clear that briefs do not amend the pleadings.").

[45] The Court does not reach the merits of Defendants' contention that Plaintiff failed to allege a contractual right that would justify the requested declaration.

[46] *RGIS Int'l Transition Holdco, LLC v. Retail Servs. Wis Corp.*, 2024 WL 568515, at *5 (Del. Super. Feb. 13, 2024) ("A civil conspiracy claim requires a plaintiff establish that 'two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means.'") (citation omitted).

[47] *Id.* ("An aiding and abetting claim requires a plaintiff allege '(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance.'") (citation omitted).

[48] *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020) ("A corporation cannot conspire with itself any more than a private individual can, and it is a general rule that the acts of the agent are the acts of the corporation.").

[49] *RGIS Int'l Transition Holdco, LLC*, 2024 WL 568515, at *5 (internal citations and quotations omitted).

[50] *Id.*

[51] *Id.*

13

have obtained a personal benefit independent of her relationship with the company or distinct from other equity owners.[52]  For example, an increase in the value of the officer's equity in the company, as all equity-holders enjoyed, would be insufficient to impose personal liability on the officer for acts taken to bring the transaction to fruition.

To support his claim, Plaintiff argues the Holowatys "individually profited from the intentional dilution of [Plaintiff's] value"[53] and "[a]s members of GreenMarbles, [they] stood to benefit as a result of the Nomo acquisition and transfer of improperly valued interests in GreenMarbles to [Plaintiff] through the Nomo [T]ransaction."[54]  However, Plaintiff alleges no facts that the Holowatys acted outside their roles as officers of GreenMarbles or obtained a benefit outside their ownership in the company.[55]

Plaintiff argues that at this stage he is entitled to the reasonable inference that the Holowatys personally benefitted because of their involvement in the transaction

---

[52] *See Skye Mineral Investors, LLC v. DXS Capital U.S. LTD.*, 2021 WL 3184591, at *20 (Del. Ch. July 28, 2021).

[53] Am. Compl. ¶ 38.

[54] *Id.* ¶ 70.

[55] *Amaysing Tech. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at * 8 (Del. Ch. Mar. 3, 2005) ("The evidence does not suggest that the…Defendants were…seeking to gain a benefit independent of their employment by or investment in [defendant corporation].  Thus, the factual allegations do not support an inference that…Defendants were motivated by personal motives divergent from those of the corporation."); *see also Anschutz Corp.*, 2020 WL 3096744, at *18 (dismissing civil conspiracy and aiding and abetting claims where defendant officers were "alleged to have committed fraud to inflate the true the value of [their company] or earn a bonus.").

and therefore, he is entitled to explore this through discovery. Delaware applies a notice pleading standard and the court will draw reasonable inferences in a plaintiff's favor from the facts alleged, but conclusory allegations do not unlock the door to discovery in hope of finding evidence to support a claim.[56]

The conspiracy (Count III) and aiding and abetting (Count IV) claims are DISMISSED.

## C. *The California securities fraud claim fails.*

### 1. *The California securities fraud statute*

In "response to the difficulty of proving common law fraud" California's legislature "created a new form of statutory liability dealing with fraudulent practices in securities transactions."[57] Thus, California Corporate Code Section 25401 was adopted in 1968. It provides that:

> it is unlawful for any person to offer or sell a security in [California]…by means of any written or oral communication which includes an untrue statement of material fact or omits to state a material fact necessary to make statements made, in the light of the circumstances under which the statements were made, not misleading.[58]

The remedies for a violation of Section 25401 are set forth in Section 25501.

---

[56] *See In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.* 318 A.3d 306, 328–29 (Del. Ch. 2024) (finding that allowing conclusory allegations to proceed to discovery would only result in a fishing expedition for facts).
[57] *Boam v. Trident Fin. Corp.*, 8 Cal. Rptr. 2d 177, 180 (Cal. Ct. App. 1992).
[58] Cal. Corp. C. § 25401.

It provides that:

> [a]ny person who violates Section 25401 shall be liable to the person who purchases a security from, or sells a security to, that person, who may sue either for recission or for damages (if the plaintiff or defendant, as the case may be, no longer owns the security) [subject to certain affirmative defenses not relevant here.][59]

The statute includes a formula for additional compensation a purchaser[60] may receive upon rescission and a different formula for a seller's compensation[61] upon rescission. Likewise, the statute provides a formula for damages a purchaser[62] may receive and a different damages formula for a seller.[63]

In adopting the statute, the legislative intent was to provide an easier mechanism for recovery for fraud in securities transactions—not requiring reliance, causation, or scienter[64]—but limiting the damages available to a successful

---

[59] Cal. Corp. C. § 25501.

[60] *Id.* ("Upon rescission, a purchaser may recover the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security, upon tender of the security.").

[61] *Id.* ("Upon rescission, a seller may recover the security, upon tender of the consideration paid for the security plus interest at the legal rate, less the amount of any income received by the defendant on the security.").

[62] *Id.* ("Damages recoverable under this section by a purchaser shall be an amount equal to the difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received on the security by the plaintiff."); *see also Boam v. Trident Fin. Corp.*, 8 Cal. Rptr. 2d 177, 181 (Cal. Ct. App. 1992) (describing the "fairly straightforward" arithmetical formula to calculate damages).

[63] Cal. Corp. C. § 25501 ("Damages recoverable under this section by a seller shall be an amount equal to the difference between (1) the value of the security at the time of the filing of the complaint plus the amount of any income received by the defendant on the security and (2) the price at which the security was sold plus interest at the legal rate from the date of sale.").

[64] *See Boam*, 8 Cal. Rptr. 2d at 180; *see also Bowden v. Robinson*, 136 Cal. Rptr. 871, 878 (Cal. Ct. App. 1977). The party successfully showing a violation of Section 25401 "shall" be awarded attorneys' fees and costs. Cal. Corp. C. § 25501.

claimant.[65]  California courts have construed this statute to mean that "a [plaintiff] who chooses to bring an action under the statute … is not entitled to *any relief* other than that prescribed by the statute."[66]

Rescission requires each party to a contract to "restore to the other everything of value received under the contract."[67]  If the claimant still owns the security, he may only obtain a rescission, however, if the claimant no longer owns the security he may recover the specified damages.[68]

## 2.     *The securities fraud claim fails to allege a recoverable remedy.*

Defendants do not argue that Plaintiff failed to adequately plead a claim under Section 25401.  Instead, they argue that Plaintiff's claim fails because it seeks a remedy he cannot recover.  Plaintiff asserts "[he] has been damaged in an amount to be proven at trial and is entitled to return his interest in GreenMarbles to GreenMarbles in exchange for GreenMarbles paying him $10,000,000."  Thus, Plaintiff is seeking a monetary damages award.  But Plaintiff still owns the

---

[65] *Boam,* 8 Cal. Rptr. 2d at 180.  The statute also shortens the statute of limitations. *Id.*

[66] *Id.* (emphasis added); *see e.g.*, *California Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 917, 921 (Cal. Ct. App. 2001) (The statute "balances this expansion of liability by placing other restrictions on recovery."); *Dep't. of Corps. v. Superior Court*, 153 Cal. Rptr. 3d 624, 632 (Cal. Ct. App. 2007) ("While intending to minimize securities fraud, the Drafters of [Section 25501] were also cognizant of the dangers of casting the net of civil liability too broadly.").

[67] *Viterbi v. Wasserman*, 191 Cal. Rptr. 3d 231, 237 (Cal. Ct. App. 2011).

[68] Cal. Corp. C. § 25501; *Viterbi*, 191 Cal. Rptr. 3d at 237 (Cal. Ct. App. 2011) (explaining "under [S]ection 25501, because plaintiffs still own the securities at issue in this action, their sole potential remedy is rescission."); *Ferry v. DF Growth REIT, LLC*, 2024 WL 1298074, at*5–6 (S.D. Cal. Mar. 26, 2024) (dismissing action under Section 25501 where plaintiff retained the security, finding that the complaint did not assert a viable claim for damages).

17

GreenMarbles membership interests and therefore, under the statute, he would be only entitled to rescission, which the Amended Complaint does not seek.

Plaintiff argues that this is a "unique" situation and posits that the Court could grant a partial rescission—the return of the interest in GreenMarbles for $10 million. But Section 25501 simply does not provide for a partial rescission.[69] Plaintiff points to no authority giving the court the ability to craft a remedy by blending the specifically defined statutory remedies.

As a final effort to save his claim, Plaintiff argues that awarding a mixture of money damages and rescission is permissible under California law, citing a variety of California cases that awarded rescission and money damages, or allowed for its possibility.[70] However, none of the cases awarded mixed relief under the constraints imposed by Section 25501.[71] Accordingly, Defendants' Motion as to the California securities fraud claim (Count I) is GRANTED.

---

[69] Cal. Corp. C. § 25501 ("Upon rescission, a purchaser may recover the consideration paid for the security[.]"); *see also Boam*, 8 Cal. Rptr. 2d at 180 ("[W]e construe 'may recover' in section 25501 not as a grant of discretion to allow some form of relief once the buyer has established a right to rescission…but as a limitation on recovery to which the wronged buyer is entitled.").

[70] *Nelson v Offield*, 2024 WL 1325604, at *14 (Cal. Ct. App. Mar. 28, 2024); *Campbell v. FPI Mgmt., Inc.*, 317 Cal. Rptr. 3d 391, 409 (Cal. Ct. App. 2024); *In re Real Estate Assocs. Lid. P'ship. Litig.*, 223 F. Supp. 2d 1109, 1139 (C.D. Cal. 2002).

[71] *Nelson*, 2024 WL 1325604, at *14 (trust and estate dispute); *Campbell*, 317 Cal. Rptr. 3d at 409 (landlord-tenant dispute); *In re Real Estate Assocs. Lid. P'ship. Litig.*, 223 F. Supp. 2d at 1139 (holding rescission and damages can coexist for common-law claims).

**D.** *Leave to amend is granted.*

Should Defendants find success on their Motion—they have—Plaintiff requests leave to amend pursuant to Superior Court Civil Rule 15(a).[72] "It is the general policy [under Rule 15(a)] to freely permit amendments to pleadings unless the opposing party would be seriously prejudiced by the amendment."[73] "A decision to permit or deny amendment under Rule 15(a) is left to the discretion of the trial judge."[74] While Defendants asked for dismissal with prejudice, they failed to assert any real prejudice by permitting an amendment. Defendants claim that amendment would be futile, but provides no support for this conclusion. Accordingly, Plaintiff's request for leave to amend is GRANTED.[75]

## VI.   CONCLUSION

Because the declaratory judgement count is based on legal relief, this court has jurisdiction over the claim. The claim is dismissed, however, because it is duplicative of the fraud claim. Therefore, Defendants' Motion pursuant to Rule 12(b)(1) is DENIED but is GRANTED under Rule 12(b)(6).

Defendants' Motion pursuant to Rule 12(b)(6) is GRANTED as to the aiding and abetting and conspiracy claims because the Holowaty defendants cannot be

---

[72] AB at 25; Super. Ct. Civ. R. 15(a).
[73] *US Dominion, Inc.v. Newsmax Media, Inc.*, 2025 WL 1068257, at *1 (Del. Super. Apr. 9, 2025).
[74] *Id.*
[75] *Id.* ("The purpose of Rule 15 is to encourage the disposition of litigation its merits.").

19

personally liable for the alleged corporate tort and the Amended Complaint fails to plead facts to fall within the exception to this principle. Defendants' Motion is also GRANTED as to the statutory securities fraud claim for failure to plead a viable remedy.

Plaintiff's request for leave to amend his complaint is GRANTED. Any amended pleading shall be filed within 30 days.

**IT IS SO ORDERED**.

*Kathleen M. Miller*
Kathleen M. Miller, Judge