## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SUN LIFE ASSURANCE )
COMPANY OF CANADA – U.S. )
OPERATIONS HOLDINGS, INC., )
                         )
        Plaintiff, )
                         )
     v. )   C.A. NO.: N18C-07-173 AML CCLD
                         )
GROUP ONE THOUSAND ONE, )
LLC F/K/A DELAWARE LIFE )
HOLDINGS, LLC, )
                         )
        Defendant. )

Submitted: January 17, 2019
Decided: March 29, 2019

**Upon Defendant's Motion to Dismiss or, in the Alternative, to Transfer:
Denied**

### MEMORANDUM OPINION

Raymond J. DiCamillo, Esquire, Travis S. Hunter, Esquire, Renee M. Mosley, Esquire of RICHARDS, LAYTON, & FINGER, P.A., Wilmington, Delaware, and Daniel M. Abuhoff, Esquire, and Matthew D. Forbes, Esquire of DEBEVOISE & PLIMPTON LLP, New York, New York, *Attorneys for* Plaintiff.

Robert S. Saunders, Esquire, Matthew P. Majarian, Esquire, and Daniel S. Atlas, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware, *Attorneys for* Defendant.

**LeGrow, J.**

This dispute arose from Defendant's purchase of several of Plaintiff's subsidiaries. Plaintiff and Defendant entered into a stock purchase agreement governing the sale. Plaintiff initiated this breach of contract action against Defendant for failing to pay over a tax refund that Plaintiff contends belongs to it under the stock purchase agreement. Defendant moved to dismiss or transfer the action under the stock purchase agreement's forum selection clause, which designates the Delaware Court of Chancery as the parties' first choice of forum for any action arising out of the agreement.

The question presented in this case is whether Plaintiff's breach of contract claim falls within the statutory grant of authority in the LLC Act or seeks equitable relief, thereby conferring jurisdiction on the Court of Chancery. Although the Court generally will respect the parties' choice of forum, the parties cannot contract for jurisdiction where it otherwise is unavailable. Defendant's broad interpretation of the Court of Chancery's statutory jurisdiction is unreasonable and inconsistent with the cases and other sources interpreting the statute. Additionally, Plaintiff's claim is not equitable in nature because money damages adequately would address the harm from the alleged breach of contract. The Court of Chancery therefore does not have subject matter jurisdiction, and Defendant's motion to dismiss is denied.

## FACTS AND PROCEDURAL BACKGROUND

The Plaintiff, Sun Life Assurance Company of Canada ("Sun Life"), is an insurance company incorporated in Delaware. Sun Life is a subsidiary of Sun Life Financial, Inc. ("Sun Life Financial"), a publicly traded Canadian company. In 2012, Sun Life Financial agreed to sell its subsidiary, Sun Life Reinsurance (Barbados) No. 3 Corp. ("BarbCo3"), to the Defendant, Group One Thousand One, LLC ("G1001"). The parties executed a Stock Purchase Agreement (the "SPA"), in which Sun Life agreed to convey all its issued and outstanding shares of BarbCo3 stock to G1001. In the SPA, the parties negotiated how they would handle pre and post-closing tax matters. Section 6.3 of the SPA specifically governed who was entitled to post-closing tax refunds. The transaction closed on August 2, 2013, and in November 2016 the IRS issued BarbCo3 a $10,073,433 tax refund related to the 2011 tax year (the "Refund"). Sun Life contends it is entitled to the Refund under Section 6.3 of the SPA, but G1001 has refused to pay the Refund to Sun Life.

On July 23, 2018, Sun Life filed a one-count complaint in this Court (the "Complaint") for breach of contract against G1001 seeking damages in the amount of the Refund. G1001 filed a motion to dismiss under Superior Court Civil Rule 12(b)(3) or, in the alternative, a motion to transfer this action to the Delaware Court of Chancery under 10 *Del. C.* § 1902, by reason of the SPA's forum

2

selection clause. That clause creates a hierarchy of Delaware forums in which the parties agreed to litigate any disputes arising under the SPA. Specifically, the forum selection clause provides each party:

> [S]ubmits for itself and its property to the exclusive jurisdiction of the Delaware Court of Chancery, or if the Delaware Court of Chancery lacks jurisdiction of the subject matter, the United States District Court for the District of Delaware, or if both the Delaware Court of Chancery and the United States District Court for the District of Delaware lack jurisdiction of the subject matter, any court of competent jurisdiction sitting in the State of Delaware (together with any appellate courts therefrom, the "Permitted Courts") in any action directly or indirectly arising out of this Agreement, including the formation, breach, termination, validity, interpretation or enforcement thereof, or any transaction contemplated by this Agreement.[1]

The parties do not dispute the validity or scope of the SPA's forum selection clause. The parties additionally agree that the United States District Court for the District of Delaware lacks subject matter jurisdiction. Therefore, if the Court of Chancery does not have subject matter jurisdiction over Sun Life's claim, the parties agree the Superior Court is the appropriate forum for this dispute.

**The Parties' Contentions**

In its motion to dismiss, G1001 argues the Court of Chancery has statutory and equitable jurisdiction over Sun Life's claim and Sun Life therefore is required under the SPA's forum selection clause to pursue its claim in that Court. G1001 first contends 6 *Del. C.* § 18-111 confers jurisdiction on the Court of Chancery

---

[1] Complaint, Ex. 1 § 12.6(b)(i).

because that statute grants the Court of Chancery jurisdiction over all contract disputes involving an LLC. G1001 also argues the Court of Chancery has jurisdiction over this dispute because Sun Life seeks equitable relief, specifically an order of specific performance directing BarbCo3 to pay over the Refund.

In response to G1001's motion, Sun Life argues the Court of Chancery does not have jurisdiction over this action because Section 18-111 does not grant the Court of Chancery broad jurisdiction over all contract disputes involving an LLC, but only over contracts "explicitly contemplated" by the LLC Act. Additionally, Sun Life asserts it is neither making an equitable claim nor seeking equitable relief, but rather is making a straightforward breach of contract claim and seeking monetary damages arising from that breach.

## ANALYSIS

Superior Court Civil Rule 12(b)(3) governs a motion to dismiss on the basis of improper venue. On a motion to dismiss, the Court must "assume as true all the facts pled in the complaint and view those facts and all reasonable inferences drawn from them in the light most favorable to the plaintiff."[2] The Court, however, "is not shackled to the non-moving party's complaint and is permitted to consider extrinsic evidence."[3] Under this standard, the Court should "give effect to

---

[2] *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Mar. 31, 2009).
[3] *Airbase Carpet Mart, Inc. v. AYA Associates, Inc.*, 2015 WL 9302894, at *4 (Del. Super. Dec. 15, 2015).

4

the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation" and should dismiss a case where the parties agreed to litigate in another forum.[4]

According to the SPA's forum selection clause, the Court of Chancery is the parties' first choice of forum. A forum selection clause, however, cannot confer jurisdiction or venue where it otherwise is not available.[5] The Court of Chancery is a court of limited jurisdiction and only may acquire jurisdiction if: "(1) one or more of the plaintiff's claims . . . is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[6] The burden is on the plaintiff to prove subject matter jurisdiction exists, but the Complaint's prayers for relief are not controlling, and the Court may look beyond the pleadings to determine the nature of the claim.[7]

---

[4] *Loveman*, 2009 WL 847655, at *2 (quoting *Halpern Eye Associates, P.A. v. E.A. Crowell & Associates, Inc.*, 2007 WL 3231617, at *1 (Del. Com. Pl. Sept. 18, 2007)); *Double Z Enterprises, Inc. v. General Marketing Corp.*, 2000 WL 970718, at *2 (Del. Super. June 1, 2000). *See also Capital Group Companies, Inc. v. Armour*, 2004 WL 2521295, at *3 (Del. Ch. Oct. 29, 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("Forum selection/consent to jurisdiction clauses are 'presumptively valid' and should be 'specifically' enforced unless the resisting party 'could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching.'")).

[5] *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36, 39 (Del. 1995) (quoting *Elia Corp. v. Paul N. Howard Co.*, 391 A.2d 214, 215-16 (Del. Super. 1978) ("Jurisdiction over a party or subject matter, or venue of a cause, cannot be determined by private bargaining where there is no other basis for such jurisdiction or venue.")).

[6] *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[7] *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007); *Hughes Tool Co. v. Fawcett Publications, Inc.*, 315 A.2d 577, 579 (Del. 1974).

5

## A. The Court of Chancery does not have jurisdiction over this dispute under Section 18-111.

G1001 asserts that Section 18-111 of the LLC Act vests the Court of Chancery with jurisdiction to interpret, apply, or enforce the SPA. G1001 contends Section 18-111 is "expansive, and grants the Court of Chancery broad jurisdiction to interpret and enforce any and all documents by which any permissible purpose enumerated in the LLC Act may be accomplished."[8] Sun Life resists such a broad reading of Section 18-111, arguing it would "drastically undermine the limited nature of the Court of Chancery's jurisdiction."[9]

Section 18-111 grants the Court of Chancery authority to hear a variety of LLC disputes. The statute provides:

> § 18-111. Interpretation and enforcement of limited liability company agreement.
>
> Any action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, *or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter*, may be brought in the Court of Chancery.

The above-quoted statutory language lists five categories of disputes over which the Court of Chancery has jurisdiction, specifically disputes involving: (1) the

---

[8] G1001's Opening Br. at 10.
[9] Sun Life's Answering Br. at 11.

provisions of an LLC agreement; (2) an LLC's duties and obligations to its members and managers; (3) the duties and obligations between and among the members, managers, and the LLC; (4) the rights, powers, or restrictions of the LLC or its members or managers; and (5) any provision of the LLC Act or any other instrument, document, agreement or certificate contemplated by any provision of the LLC Act.

G1001 argues the parties' dispute falls within the fifth category because the dispute involves interpretation and enforcement of the SPA, an agreement G1001 contends is "contemplated" by the LLC Act. G1001 relies on 6 *Del. C.* § 18-106(b) to argue the LLC Act contemplates the SPA. Section 18-106(b) broadly confers on a limited liability company powers relating to the entity's business, purpose, or activities. The statute relevantly provides:

> A limited liability company shall possess and may exercise all the powers and privileges granted by this chapter or by any other law or by its limited liability company agreement, together with any powers incidental thereto, including such powers and privileges as are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the limited liability company.[10]

The Delaware Supreme Court recently held this provision grants "broad authority to Delaware LLCs," including the authority to enter into contracts.[11] Thus, according to G1001, because the LLC Act "contemplates" contracts, and the SPA

---

[10] 6 *Del. C.* § 18-106(b).

[11] *CompoSecure, L.L.C. v. CardUX, LLC*, 2018 WL 5816740, at *7 n.36 (Del. Nov. 7, 2018) ("The powers 'necessary or convenient to' the business of an LLC include the ability to enter into contracts.").

is a contract, the Court of Chancery may exercise jurisdiction over this dispute.[12] Sun Life argues this is an unreasonable reading of Section 18-111, and the fifth category of Section 18-111 only refers to internal affairs or documents "explicitly contemplated" by the LLC Act.[13]

There is no authority definitively addressing the scope of Section 18-111's fifth jurisdictional category. The parties generally rely on the same group of cases in which the Court of Chancery has exercised jurisdiction over disputes involving LLCs. Those cases, although helpful to a certain degree, do not meaningfully explore the scope of Section 18-111's fifth category. In large part, this appears to be because in most of the cases the Court of Chancery could exercise subject matter jurisdiction over the dispute under one of Section 18-111's other categories or on the basis of that Court's equity jurisdiction.

For example, although *Prairie Capital III, L.P. v. Double E Holding Corp.* involved a stock purchase agreement for the sale of LLC interests, the plaintiff in that case requested equitable relief in the form of release of funds held in escrow.[14] Likewise, in *Cyber Holding LLC v. CyberCore Holding*, the plaintiff requested equitable relief in the form of specific performance of a stock purchase

---

[12] G1001's Opening Br. at 13-14.
[13] Sun Life's Answering Br. at 11.
[14] 132 A.3d 35, 48 (Del. Ch. 2015).

8

agreement.[15] In *Poppiti v. Conaty*, the Court of Chancery found jurisdiction under Section 18-111 because the underlying dispute required interpretation of the LLC's operating agreement, the first jurisdictional category of the statute.[16] Similarly, in *Laiken v. Northfields Development Co., LLC*, the Court of Chancery found jurisdiction under Section 18-111, but the dispute fell squarely within the second jurisdictional category of the statute because Laiken was a minority member of Northfields, and the suit involved Northfields's obligations to Laiken.[17]

In other cases the parties cite, the Court of Chancery did expressly exercise jurisdiction under Section 18-111's fifth category. In both *In re Morrow Park Holding LLC*[18] and *Duff v. Innovative Discovery LLC*,[19] the Court of Chancery concluded that it had jurisdiction to consider a case involving interpretation and enforcement of a redemption agreement. Redemption of membership interests, however, is an action expressly addressed and defined within the LLC Act.[20] Neither case adopts G1001's broad reading of Section 18-111's fifth jurisdictional category. To the contrary, the *Duff* Court described as "dubious" the contention

---

[15] 2016 WL 791069, at *7 (Del. Ch. Feb 26, 2016) (the dispute also involved a stock purchase agreement for a corporation, thus, the Court of Chancery had both equitable jurisdiction and statutory jurisdiction under 8 *Del. C.* § 111).

[16] 2012 WL 361727, at *1 (Del. Ch. Feb. 1, 2012).

[17] 2014 WL 662369, at *2 (Del. Ch. Feb. 20, 2014).

[18] 2018 WL 2110940 (Del. Ch. Mar. 28, 2018).

[19] 2012 WL 6096586 (Del. Ch. Dec. 7, 2012).

[20] 6 *Del. C.* § 18-702. *See also Duff*, 2012 WL 6096586, at *6 ("Section 18-702 explicitly contemplates that redemption agreements may be entered into by members and managers of an LLC as part of their internal dealings with the LLC.").

9

that the Court of Chancery could exercise jurisdiction over any type of agreement or contract entered into by an LLC under the authority of Section 18-106.[21]

As G1001 correctly points out, the fact that the Court of Chancery never expressly has adopted G1001's broad interpretation does not mean the interpretation is incorrect. G1001 argues Section 18-111's literal interpretation, particularly the expansive meaning of "contemplated," compels the conclusion that the statute unambiguously confers jurisdiction upon the Court of Chancery for all agreements into which an LLC might enter. G1001 posits that the Court of Chancery is the "default" forum for resolving LLC disputes and that the General Assembly's use of the phrase "contemplated by" reinforces that default forum status.[22]

If Section 18-111 is unambiguous, there is no room for judicial interpretation[23] and "the plain meaning of the statutory language controls."[24] It is true that, if the word "contemplated" is given its broadest colloquial meaning, Section 18-111 would encompass this dispute because Section 18-106(b)

---

[21] *Duff*, 2012 WL 6096586, at *6 n.28.

[22] *See Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 292 (Del. 1999).

[23] Both parties argued the statute is unambiguous. The parties' interpretation, however, is not controlling. *See Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corporation*, 2019 WL 1068183, at *8 n.68 (Del. Mar. 7, 2019) ("But whether a contract is unambiguous is a question of law; this Court cannot find an ambiguous contract unambiguous because each party interprets the contract differently to find it unambiguous. Indeed, in many contract disputes, both parties argue for different interpretations, but claim that the contract is unambiguous.") (citing *Motorola, Inc. v. Amkor Techs., Inc.*, 849 A.2d 931, 937-38 (Del. 2004) (finding a contract ambiguous despite the fact that both parties argued that it was unambiguous)).

[24] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

"contemplates" that LLCs will enter into agreements to further their business purposes. It is a recognized cannon of statutory interpretation, however, that if the literal interpretation of the statute would be absurd, the statute is ambiguous.[25] Here, the literal interpretation G1001 advances is absurd because it would grant the Court of Chancery unfettered jurisdiction over every action touching, however tangentially, any contract involving an LLC.[26] Under that literal interpretation, actions involving employment agreements, vendor contracts, consumer disputes, and debt collection all would fall under the Court of Chancery's jurisdiction simply because one of the parties to the contract was an LLC. The same actions involving a corporation as the contracting party, however, would not fall within the Court of Chancery's jurisdiction. Had the General Assembly intended to confer jurisdiction over nearly any matter in which an LLC is a party, it would have done so more clearly. Such an unprecedented expansion of the Court of Chancery's jurisdiction, however, would contravene the General Assembly's consistent effort to preserve that Court's historically limited jurisdiction and its reputation as the preeminent forum to resolve corporate disputes. Additionally, it is unlikely the General

---

[25] *A.W. Financial Services, S.A. v. Empire Resources, Inc.*, 981 A.2d 1114, 1130 (Del. 2009) ("A statute is ambiguous not only if it is 'reasonably susceptible to different conclusions or interpretations,' but also if 'a literal interpretation of the words of the statute would lead to an absurd or unreasonable result that could not have been intended by the legislature.'"). *See also CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011); *Distefano v. Watson*, 566 A.2d 1, 4 (Del. 1989).

[26] Under this interpretation, Court of Chancery jurisdiction would also apply to all contracts involving a limited partnership. *See* 6 *Del. C.* § 17-111 (containing language analogous to Section 18-111).

11

Assembly intended this interpretation because allowing an LLC to litigate basic contract or consumer actions in the Court of Chancery would eliminate the right to a jury trial in those cases. It would be absurd to conclude that the General Assembly intended to work a sea-change in the Court of Chancery's jurisdiction simply by using the word "contemplates."

The limited authority available on this issue supports the conclusion that G1001's literal interpretation of the statute is absurd. First, although the *Duff* Court did not reach the broader interpretation of Section 18-111 that G1001 now advocates, the Court nonetheless described that interpretation as "dubious."[27] Additionally, G1001's interpretation cannot be reconciled with the *Duff* Court's holding that Section 18-111 applies to documents "explicitly contemplated" by the Act.[28] Like the *Duff* Court, Donald J. Wolfe, Jr. and Michael A. Pittenger's well-recognized treatise, "Corporate and Commercial Practice in the Court of Chancery," also accords Section 18-111 a narrower interpretation, stating that the statute grants the Court of Chancery jurisdiction to resolve disputes concerning "agreements that are explicitly contemplated by the [LLC Act]."[29] Additionally, the treatise notes that this provision is narrower than 8 *Del. C.* § 111(a), the provision of the Delaware General Corporation Law (DGCL) granting Court of

---

[27] *Duff*, 2012 WL 6096586, at *6 n.28.
[28] *Id.* at *6.
[29] DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE COURT OF CHANCERY § 2.02[d] n.92 (2d ed. 2018).

Chancery jurisdiction, because Section 18-111 does not, for example, "explicitly confer jurisdiction as to certificates of merger, conversion, or domestication."[30]

Having concluded Section 18-111 is ambiguous because its literal interpretation leads to an absurd result, the Court must determine the statute's meaning in a way that promotes its apparent purpose and harmonizes it with other statutes within the statutory scheme.[31] Additionally, the Court must reconcile Section 18-111's language with its legislative intent and, if reasonably possible, interpret the statute in way that will not render the first and fourth jurisdictional categories of Section 18-111 surplusage.[32] Legislative intent may be deduced from a statute's synopsis.[33] Section 18-111 was amended in 2009 to add the fifth jurisdictional category, and the bill synopsis states the purpose of the amendment was to "clarify the jurisdiction of the Court of Chancery with respect to matters pertaining to Delaware limited liability companies."[34]

In other words, nothing within Section 18-111's legislative history indicates it was intended to expand substantially the Court of Chancery's jurisdiction. The

---

[30] *Id.*

[31] *Division of Family Services v. O'Bryan*, 164 A.3d 58, 62 n.18 (Del. 2017) (quoting *Dawson v. State Farm Mut. Auto. Ins. Co.*, 980 A.2d 1035, 1038-39 (Del. Super. 2009) ("[T]he Court must construe the statute in a way that will promote its apparent purpose and harmonize it with other statutes within the statutory scheme. In other words, the statute must be read as a whole in a manner that avoids absurd results.")).

[32] *Distefano*, 566 A.2d at 4; *CML V, LLC*, 28 A.3d at 1041 ("We also ascribe a purpose to the General Assembly's use of particular statutory language and construe it against surplusage if reasonably possible.").

[33] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1289-90 (Del. 2007).

[34] Del. S.B. 82 syn., 145th Gen. Assem. (2009).

13

fifth category likely was intended to be a catch-all provision to capture other agreements or documents not encapsulated within the first four jurisdictional categories of Section 18-111. The fifth category clarified the Court of Chancery's jurisdiction to interpret and apply any provision of the LLC Act or a document, certificate, agreement, or instrument contemplated by the Act. The only reasonable interpretation of the statutory language at issue is that the General Assembly intended it to apply to a document or instrument expressly or explicitly contemplated by the Act, since interpreting or enforcing such a document also likely would require the Court of Chancery to interpret or enforce the Act. That is, where the Act explicitly defines a particular power or obligation of an LLC or its members, and a document or instrument is created arising from that power or obligation, the Court of Chancery has jurisdiction over a dispute involving that instrument. This interpretation avoids an absurd result and eliminates the artificial distinction between an action to interpret or enforce the LLC Act and one to interpret or enforce a document expressly referenced or contemplated by the Act.

The SPA, however, is not expressly referenced or contemplated by the LLC Act. The broad power to contract arising from Section 18-106(b) is not explicit in the statute. Nothing in the LLC Act overtly references a stock purchase agreement. This is not to say that it would be absurd to give the Court of Chancery jurisdiction over a stock purchase agreement such as the one at issue here. The General

14

Assembly has done that for certain categories of stock purchase agreements under the DGCL.[35] The General Assembly has not, however, accorded the Court of Chancery jurisdiction over all stock purchase agreements or asset purchase agreements, and there is no way to read the current version of Section 18-111's fifth category in a manner that would accord the Court of Chancery jurisdiction over stock purchase agreements but not all other contracts into which an LLC might enter.[36]

For the foregoing reasons, and because the SPA is not expressly contemplated by the LLC Act, the Court of Chancery does not have statutory jurisdiction over this dispute under Section 18-111.

**B. Sun Life's claims are not equitable in nature.**

Sun Life maintains that it has pleaded one claim for money damages arising from breach of contract, which is not an equitable claim. G1001, however, argues Sun Life essentially is making a claim for specific performance (*i.e.* release of the tax refund from BarbCo3). In considering whether Sun Life's claims are equitable in nature, the Court must look beyond the form of pleadings and "focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[37] If Sun Life's breach of contract claim is equitable in

---

[35] 8 *Del. C.* § 111(a)(2).
[36] *See id.*
[37] *Candlewood Timber Group, LLC*, 859 A.2d at 997.

nature, there must not be an adequate remedy at law available.[38] The Court therefore must decide whether Sun Life's claims may be remedied by monetary damages, or if Sun Life actually is making a claim for specific performance.

G1001 argues "Delaware case law makes clear that a post-closing dispute regarding a tax refund received by a non-party to the action should be adjudicated pursuant to the Court of Chancery's equitable jurisdiction, rather than as an action at law."[39] Delaware law, however, is not nearly so clear or unequivocal. With two exceptions, every case G1001 cites for this principle involved money held by an escrow agent.[40] Those cases do little to address the issue in this case, because it is settled that specific performance is the appropriate form of relief to compel the release of funds held by an escrow account.[41] This case, in contrast, does not involve funds held in an escrow account.

---

[38] *El Paso Natural Gas Co.*, 669 A.2d at 39.

[39] G1001's Opening Br. at 16.

[40] *Haney v. Blackhawk Network Holdings, Inc.*, 2017 WL 543347 (Del. Super. Feb. 8, 2017) (where the disputed funds were held in an escrow account); *QC Holdings, Inc. v. Allconnect, Inc.*, 2018 WL 4091721 (Del. Ch. Aug. 28, 2018) (where the disputed funds were held in an escrow account); *United BioSource LLC v. Bracket Holding Corp.*, 2017 WL 2256618 (Del. Ch. May 23, 2017) (where the subsidiary was holding the tax refund in a separate interest-bearing account). In the cases G1001 cites that did not involve an escrow agent, the Court of Chancery clearly had jurisdiction based on 8 *Del. C.* § 111. *See Cyber Holding LLC*, 2016 WL 791069 (parties were in dispute over payment of "tax savings" received after execution of a stock purchase agreement, not a "tax refund," regardless, the Court of Chancery had jurisdiction based on 8 *Del. C.* § 111 because the stock purchase agreement was for a corporation); *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842 (Del. Ch. 2016) (defendant, not a third party, was holding the tax refund, although, the Court of Chancery had jurisdiction based on 8 *Del. C.* § 111 because the dispute involved a merger agreement for a corporation).

[41] *QC Holdings, Inc.*, 2018 WL 4091721, at *11.

G1001 heavily relies on *United BioSource LLC v. Bracket Holding Corp.*, where the Court of Chancery confronted a similar tax refund dispute arising under a stock purchase agreement for an LLC.[42] In that case, the Court of Chancery exercised jurisdiction based on a specific performance claim.[43] Several facts make *United BioSource* distinguishable from this case. First, the non-party subsidiary that received the tax refund at issue in *United BioSource* was holding the funds in a separate, interest-bearing account.[44] Additionally, the defendant and non-party subsidiary's parent company were proposing to sell the non-party subsidiary, creating a danger that the plaintiff would be unable to collect a judgment.[45] Relying on these facts, the Court of Chancery concluded the plaintiff had no adequate remedy at law and specific performance therefore was the appropriate form of relief.[46] Neither of the facts the *United BioSource* Court relied on are present in this case. Nothing in the record indicates the tax refund is in a separate account, that there is a proposed sale of BarbCo3, or that such a sale would make collection of a damages award uncertain. G1001's reliance on *United BioSource* therefore is misplaced.

The other cases on which G1001 relies make clear that in some circumstances the Court of Chancery may exercise jurisdiction over a post-closing

---

[42] 2017 WL 2256618.
[43] *Id.* at *4.
[44] *Id.*
[45] *Id.*
[46] *Id.*

17

dispute, such as a tax refund paid to a non-party. Like *United BioSource*, however, each case turns on the Court's conclusion that specific performance or other equitable relief was necessary because money damages were not a sufficient remedy.[47] Here, in contrast, Sun Life's claim for money damages under the contract adequately would address any claimed harm. Sun Life seeks money damages from the party that allegedly contractually was obligated to pay over the Refund. G1001 argues, however, that G1001's obligation, if any, is to pay over the Refund that BarbCo3 received, not the equivalent amount of money, and therefore complete relief cannot be obtained without an order of specific performance directing BarbCo3 to pay over the Refund.[48] This argument is untenable. First, G1001 is the contractually-obligated party. In addition, there is nothing in the record indicating the Refund is separated or segregated or that collection of a money judgment would be improbable. Judgment in an amount equivalent to the Refund therefore adequately and completely would remedy the harm to Sun Life of non-payment.

---

[47] *Haney*, 2017 WL 543347, at \*4 (discussing concern over whether the escrow agent would comply with a legal judgment and turn over the escrow funds); *QC Holdings, Inc.*, 2018 WL 4091721, at \*11 n.44 (reasoning that a claim for the release of escrow funds is equitable in nature because a damages award would still require specific performance or an affirmative injunction, therefore, a legal judgment alone would not be an adequate remedy).
[48] G1001's Opening Br. at 18-19.

## CONCLUSION

For the foregoing reasons, G1001's Motion to Dismiss for improper venue or, in the alternative, to Transfer this action to the Court of Chancery pursuant to 10 *Del. C.* § 1902 is **DENIED. IT IS SO ORDERED.**