# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| BOB AGAHI, | ) |
| | ) |
| Plaintiff, | ) C.A. No. N23C-07-144 MAA CCLD |
| | ) |
| v. | ) |
| | ) |
| KEVIN RICHARD KELLY and | ) |
| KELLY & CO., LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Submitted: January 18, 2024
Decided: March 15, 2024

*Plaintiff's Motion for Summary Judgment:*
**DENIED.**

*Defendants' Motion to Dismiss:*
**DENIED.**

## <u>MEMORANDUM OPINION</u>

Justin T. Hymes, Esquire (Argued), of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, Attorney for Plaintiff.

Blake Rohrbacher, Esquire, Andrew L. Milam, Esquire (Argued), and Sandy J. Xu, Esquire, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, Attorneys for Defendants.

**Adams, J.**

## INTRODUCTION

Plaintiff Bob Agahi ("Agahi") filed this action against Defendants Kevin Richard Kelly ("Kelly") and Kelly & Co., LLC ("K&C") to recover funds Kelly owes under a settlement agreement. Kelly does not dispute his payment obligations under the settlement agreement. Kelly instead argues Agahi should have filed this action in the Court of Chancery, rather than this Court, because Agahi is essentially requesting specific performance. Kelly thus moved to dismiss the Complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Agahi, seizing on Kelly's lack of a substantive defense, moved for summary judgment in response to Kelly's motion. Agahi contends Kelly's procedural arguments are invalid and there are no factual disputes that require delaying judgment. This is the Court's decision on these competing motions. For the reasons stated herein, both motions are DENIED.

## FACTS

The facts in this case are, for the most part, simple and undisputed. The current controversy arises from a broader dispute pitting the unitholders of two related entities—Benchmark Investments LLC and Benchmark General LLC (together, "Benchmark")—against Kelly and his affiliates.[1] Those years-long

---

[1] Compl. ¶ 2 (D.I. 2).

litigations spanned numerous legal theories and several jurisdictions.[2]  The fracas was supposed to end with a settlement agreement entered into in February 2023 by Kelly, the Benchmark unitholders, and their respective affiliates (the "Agreement").[3]  As the existence of this opinion portends, their accord was short-lived.

## I.    The Agreement

Numerous parties—most of whom are not named in this lawsuit—entered into the Agreement on February 21, 2023.[4]  As relevant here, the key parties were Kelly, along with his affiliate entities, and Agahi, along with the other Benchmark unitholders (the "Unitholders").[5]  The purpose of the Agreement was to "resolve all disputes and claims among" the parties.[6]  In light of the broad disputes it was intended to extinguish, the Agreement contained a variety of reciprocal obligations.  Two interrelated obligations—the "Funds Transfer" and the "Documents Transfer"—are most critical here.  Essentially, Kelly and the Unitholders agreed to swap money for documents.  The details of the exchange follow.

To effect the Funds Transfer, Kelly was required to send $2.45 million to his counsel to hold in escrow (the "Held Funds") with instructions to release that money in accordance with the Agreement.[7]  Kelly's counsel was then supposed to send

---

[2]  *Id.*
[3]  *Id.* ¶ 1.
[4]  *Id.*; Compl., Ex. 1 (hereinafter, "Agreement") at Recitals.
[5]  Compl. ¶ 1.
[6]  Agreement at Recitals.
[7]  *Id.* § 1.1.

notice to Agahi's counsel that Kelly's counsel had the Held Funds.[8] Finally, when Agahi's counsel notified Kelly's counsel that Agahi's counsel was prepared to effect the Documents Transfer, Kelly's counsel was to send the Held Funds to Agahi's counsel.[9]

The Documents Transfer is the inverse of the Funds Transfer, with documents substituted for money. More specifically, Agahi and another Unitholder were required to compile certain documents and transfer them to Agahi's counsel to be held in escrow (the "Held Documents") with instructions to release them in accordance with the Agreement.[10] Agahi's counsel was then to notify Kelly's counsel that Agahi's counsel was prepared to deliver the Held Documents.[11] When both sides were ready (the "Transfer Date"), respective counsels were supposed to swap the Held Funds for the Held Documents.[12]

The Funds Transfer and the Documents Transfer were each a condition to closing.[13] Another condition to closing—though, importantly, not a condition to either the Funds Transfer or Documents Transfer—was the "Fundamental Transfer."[14] The mechanics of the Fundamental Transfer are inessential for present

---

[8] *Id.*
[9] *Id.* § 1.2.
[10] *Id.* § 2.2.
[11] *Id.*
[12] *Id.* § 1.2.
[13] *Id.* § 1.5.
[14] *Id.*

purposes. Suffice it to say, Benchmark, Fundamental Income Partners, LLC, and Fundamental Income Strategies, LLC would untangle their interconnected ownership by swapping their respective units in each other.[15] Upon closing—*i.e.*, the completion of the Funds Transfer, the Documents Transfer, and the Fundamental Transfer—several other obligations would be triggered, including the voluntary dismissal of the various litigations.[16]

The Agreement specifically provided that "Kelly (and/or [K&C]) hereby represents that he will have $2.45 million in cash by or before the Transfer Date . . . that will be segregated from other funds and available to be used by him exclusively for the payment of the settlement consideration contemplated by this Agreement."[17] The Agreement also provided that "The Unitholders [including Agahi] will separately agree to an allocation among them of the sale proceeds; Kelly will have no input into—and no responsibility or liability for—that allocation."[18]

## II. Kelly's Breaches of the Agreement

Not long after the parties executed the Agreement, Kelly informed the Unitholders he would not have the $2.45 million on time and thus, could not complete the Funds Transfer.[19] The Unitholders agreed to postpone the Transfer

---

[15] *See Id.* § 1; Agreement, Ex. A.
[16] *See generally* Agreement.
[17] *Id.* § 1.
[18] *Id.*
[19] Compl. ¶ 28.

Date until July 6, 2023, but charged Kelly an additional $150,000 for the delay.[20]

The $150,000 became due on April 16, 2023.[21]

On July 6, 2023, the "Amended Transfer Date," Kelly finished paying the then-overdue $150,000 but still did not have the principal $2.45 million.[22] Kelly instead tendered the excuse that he could not find financing for his contractually promised payment.[23] Kelly initially represented he was "confident" he could obtain the funds by the end of July 2023.[24] Kelly later said he would not have the funds until, at least, August 14, 2023.[25] To date, Kelly has neither paid the $2.45 million, nor suggested a date on which he might do so.[26]

Agahi, meanwhile, has represented that he and the other Unitholders stand ready and willing to perform all of their obligations under the Agreement once they receive the money they were promised.[27]

## PROCEDURAL HISTORY

Agahi initiated this action by filing his Complaint on July 26, 2023.[28] Kelly responded by moving to dismiss the Complaint on September 7, 2023.[29] Agahi

---

[20] Compl., Ex. 2.
[21] Compl. ¶ 31.
[22] *Id.* ¶ 33.
[23] *Id.* ¶ 34.
[24] *Id.*
[25] *Id.*
[26] *See* Dec. 29, 2023 Status Update (D.I. 24).
[27] Compl. ¶ 35.
[28] *Id.*
[29] Defs.' Mot. to Dismiss ("Defs.' Mot.") (D.I. 7).

responded to Kelly's Motion and filed a Motion for Summary Judgment on September 25, 2023.[30] On October 31, 2023, Kelly filed a combined brief supporting his Motion to Dismiss and opposing Agahi's Motion for Summary Judgment.[31] Agahi submitted a reply brief on November 21, 2023.[32]

The Court heard argument on the two motions on December 8, 2023.[33] The Court instructed the parties to confer about when and how Kelly would remit the $2.45 million that Kelly did not dispute he still owes under the Agreement.[34] On December 29, 2023, the parties informed the Court that Kelly still had no plans as to when he would fulfill his contractual obligations.[35] Thus, the Court informed the parties on January 9, 2024 that it would take this matter under advisement, but also requested that Agahi provide the Court with a copy of any agreement among the Unitholders regarding allocation.[36] In response, Agahi informed the Court that Agahi and the other Unitholders "have not entered into a written agreement concerning the allocation of the funds to be received from Defendants under the Settlement Agreement."[37]

---

[30] Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss and in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (D.I. 11).

[31] Defs.' Br. in Further Supp. of their Mot. to Dismiss and in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Reply") (D.I. 16).

[32] Pl.'s Br. in Further Supp. of its Mot. for Summ. J. ("Pl.'s Reply") (D.I. 19).

[33] Dec. 8, 2023 Hr'g Tr. ("Tr.") (D.I. 29).

[34] Tr. at 78:6–79:1.

[35] Dec. 29, 2023 Status Update.

[36] Jan. 9, 2024 Correspondence (D.I. 25).

[37] Jan. 16, 2024 Correspondence (D.I. 26).

# ANALYSIS

## I. This Court is the Proper Forum for Agahi's Claims.

Kelly relies primarily upon Superior Court Civil Rule 12(b)(1), relating to subject matter jurisdiction, in support of his motion to dismiss regarding Agahi's purported failure to comply with the forum selection clause in the Settlement Agreement.[38] In opposition, Agahi analyzes Superior Court Rule 12(b)(3), relating to improper venue, to argue that he properly brought his claim in this Court.[39] Under either standard, dismissal is not appropriate.[40]

Superior Court Civil Rule 12(b)(1) governs motions to dismiss based on lack of jurisdiction over the subject matter. Pursuant to Rule 12(b)(1), plaintiff bears the burden "to show a basis for the [c]ourt's exercise of jurisdiction over the action."[41] The court's review is not confined to the allegations in the complaint.[42] "Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[43]

---

[38] Defs.' Mot. at 1, 5–6.

[39] Pl.'s Reply at 20–23.

[40] The Court observes that both rules are implicated here. Typically, the court reviews motions to dismiss based on a valid forum selection clause pursuant to Superior Court Civil Rule 12(b)(3). *See Sun Life Assurance Co. of Can. – U.S. Operations Hldgs., Inc. v. Grp. One Thousand One, LLC*, 206 A.3d 261, 264–65 (Del. Super. 2019). On the other hand, if Kelly is correct that Agahi really is requesting specific performance in his Complaint, this court would lack subject matter jurisdiction to hear Kelly's claims. *Id.* at 270. The Court need not resolve this potential procedural puzzle, however, because Agahi does not state a claim for specific performance and was not required to file his Complaint in the Court of Chancery.

[41] *FeraDyne Outdoors, LLC v. Reaser*, 2023 WL 9094423, at *5 (Del. Super. Dec. 20, 2023) (citing *Hurtt v. Del Frisco's Rest. Grp.*, 2019 WL 2516763, at *2 (Del. Super. June 18, 2019)).

[42] *Id.*

[43] *CRE Niagara Hldgs., LLC v. Resort Grp., Inc.*, 2023 WL 2625838, at *5 (Del. Super. Mar. 24, 2023) (quoting Del. Super. Ct. Civ. R. 12(h)(3)).

Superior Court Civil Rule 12(b)(3) governs a motion to dismiss based on improper venue. On a motion to dismiss pursuant to Rule 12(b)(3), the Court will "assume as true all facts pled in the complaint and view those facts most favorable to the plaintiff."[44] The Court is permitted to consider extrinsic evidence on a Rule 12(b)(3) motion and should "give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation."[45]

**A. This Court has Jurisdiction Over this Dispute.**

Kelly's primary argument is that this case belongs in the Court of Chancery, not this Court.[46] Kelly's argument in this regard is two-fold. First, Kelly points to the Agreement's forum selection provision, which designates the Court of Chancery as the primary forum for disputes related to the Agreement.[47] Kelly next contends that Agahi's Complaint, in practical effect, seeks specific performance—an equitable remedy only available in the Court of Chancery.[48] Neither argument is correct.

---

[44] *Sun Life*, 206 A.3d at 265 (citing *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Mar. 31, 2009).

[45] *Id.* (internal citations omitted).

[46] Defs.' Mot. at 7–11.

[47] *Id.* at 7–9.

[48] *Id.* at 9–11.

## 1. The Agreement does not Require that Actions be First Filed in the Court of Chancery.

Section 14 of the Agreement provides, in relevant part:

> Each Settling Party hereby irrevocably submits to the exclusive jurisdiction of the Court of Chancery (or another state or federal court within the State of Delaware only if the Court of Chancery lacks jurisdiction to hear any such action, suit or proceeding) in respect of any action, suit, or proceeding arising out of or related to this Agreement[.][49]

The Court agrees with Kelly that such provisions are generally enforceable and work to "divest a court that otherwise has jurisdiction of its status as a proper venue for the plaintiff to sue."[50] An important caveat to that rule, though, is parties may not agree to confer subject matter jurisdiction upon a court where it would not otherwise exist.[51] The critical issue, therefore, is whether the Court of Chancery lacks jurisdiction such that "another state . . . court within the State of Delaware" is empowered to hear this case pursuant to the Agreement.[52]

Kelly's only proposed basis for the Court of Chancery's jurisdiction is that Agahi purportedly seeks specific performance.[53] Before the Court reaches that

---

[49] Agreement § 14.

[50] *Everphone, Inc. v. Go Tech. Mgmt., LLC*, 2023 WL 7996560, at *3 (Del. Super. Nov. 17, 2023) (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *6 (Del. Ch. Oct. 19, 2000)).

[51] *See Milhollan v. Live Ventures, Inc.*, 2023 WL 2943237, at *2 (Del. Ch. Apr. 13, 2023) (quoting *Butler v. Grant*, 714 A.2d 747, 749–50 (Del. 1998)).

[52] Agreement § 14.

[53] Defs.' Mot. at 10–11.

question, it must first consider Kelly's argument that Agahi was obliged to first file in the Court of Chancery and test that court's jurisdiction there.

Kelly relies exclusively on *Online Healthnow, Inc. v. CIP OCL Investments, LLC*[54] for the proposition that only the Court of Chancery can decide whether it has jurisdiction over a claim. In that case, the Superior Court did require a plaintiff who was bound to a forum selection clause to first seek relief in the Court of Chancery to determine whether that Court would accept jurisdiction.[55] There is, however, an obvious distinction. In *Online Healthnow*, the relevant forum selection provision only permitted filing in the Superior Court "if the Delaware Court of Chancery *declines to accept* jurisdiction."[56] Accordingly, the language of that provision explicitly required actions to be filed in the Court of Chancery first. The same cannot be said here.

Now-Justice LeGrow's decision in *Sun Life Assurance Company of Canada – U.S. Operations Holdings, Inc. v. Group One Thousand One, LLC* is more similar to the situation presented in this action.[57] There, like here, the relevant forum selection clause permitted filing in this Court only if "the Delaware Court of Chancery and the United States District Court for the District of Delaware *lack*

---

[54] 2020 WL 3047230 (Del. Super. May 28, 2020).
[55] *Id.* at *2–3.
[56] *Id.* at *3 (emphasis added).
[57] 206 A.3d 261 (Del. Super. 2019).

11

*jurisdiction* of the subject matter."[58]  Instead of deferring to the Court of Chancery to determine whether that court lacked jurisdiction, then-Judge, now-Justice LeGrow conducted a detailed analysis of the Court of Chancery's jurisdiction over the case.[59] Concluding that the Court of Chancery had neither statutory nor equitable jurisdiction over the case, Judge LeGrow denied the motion to dismiss or transfer the case.[60]  The Court follows *Sun Life* here.

### 2. Agahi's Complaint Sounds in Law, not Equity.

Kelly next argues that Agahi's Complaint implicitly seeks the equitable relief of specific performance.[61]  Kelly suggests that Agahi's claim for $2.45 million in contractual damages simply seeks specific performance of the Funds Transfer.[62] Kelly adds that because there are an array of interrelated obligations in the Agreement, Agahi needs to obtain an order compelling all the parties to fulfill all their obligations before Kelly can be ordered to pay.[63]  The Court disagrees.

---

[58] *Id.* at 264.
[59] *Id.* at 265–72.
[60] *Id.* at 272.
[61] Defs.' Mot. at 9–10.
[62] *Id.* at 10.
[63] *Id.*

### a) Agahi's Pursuit of Money Damages is not Specific Performance.

As a general matter, money damages is a legal, not equitable, form of relief.[64] For example, in *Testa v. Nixon Uniform Service, Inc*,[65] the a plaintiff "ask[ed] solely for the money that he believe[d] he [was] due under [a contract.]"[66] To obtain that money, the plaintiff filed in the Court of Chancery and requested equitable relief, including specific performance.[67] The Court of Chancery rejected the plaintiff's claim to equitable jurisdiction,[68] finding "[t]he specific performance [plaintiff] seeks is . . . not necessary or appropriate because [plaintiff] simply seeks the cash he says he should have received under the [contract]. *No contractual claim could be more typically legal, not equitable*."[69]

There are two identified exceptions to that general rule, neither of which apply here. One exception exists where the disputed funds are held by a third party, usually an escrow agent, such that the defendant cannot itself turn over the money.[70]

---

[64] *Epic/Freedom, LLC v. Aveanna Healthcare, LLC*, 2021 WL 1049469, at *3 (Del. Ch. Mar. 19, 2021) ("Where 'money damages will suffice to remedy any alleged breach to date, and declaratory relief will establish the proper [procedure]' for payment of damages, there is no need for equitable relief." (alteration in original) (quoting *Alliance Compressors LLC v. Lennox Indus. Inc.*, 2020 WL 57897, at *5 (Del. Ch. Jan. 6, 2020))).

[65] 2008 WL 4958861 (Del. Ch. Nov. 21, 2008).

[66] *Id.* at *2.

[67] *Id.*

[68] *Id.* at *3–4.

[69] *Id.* at *3 (emphasis added).

[70] *See Epic/Freedom*, 2021 WL 1049469, at *2–3; *see also Sun Life*, 206 A.3d at 271 ("[I]t is settled that specific performance is the appropriate form of relief to compel the release of funds held by an escrow account." (citing *QC Hldgs., Inc. v. Allconnect, Inc.*, 208 WL 4091721, at *11 (Del. Ch. Aug. 28, 2018))). The Court recognizes the Court of Chancery's recent decision in *Graciano v. Adobe Healthcare, Inc.*, 2024 WL 960946, at *10 (Del. Ch. Mar. 4, 2024). In *Adobe*, the Court of Chancery held that the plaintiff's

Although the Funds Transfer contemplated Kelly placing the $2.45 million in escrow, Kelly does not contend that ever happened. Accordingly, no third party can be ordered to release the funds.

The other exception is where the transfer of real property is involved.[71] Kelly relies upon *Booth v. Cirillo* and *Mills v. Gosling Creek, Inc.* for the proposition that courts will enforce contractual obligations to pay money through specific performance.[72] Kelly ignores that the equitable hook in both those cases was the involvement of real property.[73] In fact, in *Booth*, the Court of Chancery explicitly questioned the equitable nature of a demand for the purchase price of a parcel of land, but the court felt constrained by precedent to treat the request as one for specific performance.[74] The disputed funds in this case have no connection to the sale of real

---

request for specific performance pursuant to an escrow agreement did not satisfy that Court's equitable jurisdiction. *Id.* Rather, the Court of Chancery found:

> a declaratory judgment obtained from the Superior Court that adjudges Plaintiff's entitlement to receive a disbursement from the Escrow Account, alongside written instructions from Plaintiff, satisfies the contractual definition of a Final Order and is sufficient to cause the Escrow Agent to act. Plaintiff has an adequate remedy at law in the form a declaratory judgment from the Superior Court. Equitable relief will only become necessary if the Escrow Agent refuses to act in accordance with such Final Order.

*Id.* In any event, Plaintiff here is not seeking release of funds from an escrow account, so the exception to the general rule—to the extent that one still exists for such a claim—does not apply here.

[71] *See Booth v. Cirillo*, 1986 WL 191, at *1–2 (Del. Ch. Apr. 25, 1986) (quoting *Schutzman v. Katz*, 142 A.2d 518, 519 (Del. Ch. 1958)); *Mills v. Gosling Creek, Inc.*, 1993 WL 485901, at *3 (Del. Ch. Oct. 6, 1993).

[72] Defs.' Reply at 17.

[73] *Booth*, 1986 WL 191, at *1-2; *Mills*, 1993 WL 485901, at *3.

[74] *Booth*, 1986 WL 191, at *1 ("Were this question an open one, I would agree with defendant's position [that the right to collect money in exchange for land is not equitable]. It is not, however, a question of first impression in this Court.").

14

property. Accordingly, *Booth* and *Mills* are inapposite, and the general rule that money damages is a legal remedy applies.

The Court of Chancery reached the same conclusion upon analogous facts in *Yucaipa Corporate Initiatives Fund I, LP v. Follieri Group, LLC*.[75] Similarly to this case, the settlement agreement in *Yucaipa* "provide[d] for a series of . . . transfers and other performance obligations to follow the payment of [a principal sum], leading eventually to the dismissal of the actions and the exchange of releases."[76] Also like this case, the defendant in *Yucaipa* failed to obtain the financing necessary to fulfill its payment obligation.[77] After explaining the impracticability of crafting an order for specific performance of the various obligations, the Court concluded, "the proper course of action is for [plaintiff] to decide whether to sue for breach of the settlement agreement in an action at law or to terminate the settlement agreement as a result of the [defendants'] undisputed material breach of contract."[78] Agahi has chosen to sue for breach in an action at law, and the Court will abide his decision.

### b) The Continuing Obligations under the Agreement do not Require a Court Order.

Kelly argues that Agahi "is not and cannot be entitled to the full amount purportedly owed under the Settlement Agreement unless [Agahi]obtains an order

---

[75] 2008 WL 638273 (Del. Ch. Feb. 27, 2008).
[76] *Id.* at *1.
[77] *Id.*
[78] *Id.* at *2.

15

of specific performance requiring all parties to perform."[79]  This position flows from Kelly's fear that if he is found to have materially breached the Agreement, the other parties will abdicate their obligations under the Agreement.[80]  Although Kelly is correct that a contracting party *can* terminate its contractual obligations upon a counterparty's material breach, he fails to account for the limits on that power.

"[I]t is black-letter law that when one party to a contract materially breaches, the nonbreaching party has two options: it can terminate the agreement and sue for total breach, *or it can continue the contract and sue for partial breach*."[81]  This basic tenet of contract law is well-founded.  An innocent party should be able elect to continue performance of the contract if that is in its best interest.  But to avoid the "unjust windfall" to which Kelly alludes,[82] the nonbreaching party must fulfill its own contractual obligations in that circumstance.

Kelly's concerns about the Unitholders' future nonperformance are, therefore, unfounded.  At this juncture, Agahi has chosen to sue for partial breach and continue the contract.  Agahi's Complaint specifically references Kelly's post-closing

---

[79] Defs.' Mot. at 10.
[80] *See* Defs.' Reply at 12–13.
[81] *Macrophage Therapeutics, Inc. v. Goldberg*, 2021 WL 2582967, at *14 (Del. Ch. June 23, 2021) (alteration in original) (emphasis added) (quoting *ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383, 397 (S.D.N.Y. 1999)); *see also In re Mobilactive Media, LLC*, 2013 WL 297950, at *14 (Del. Ch. Jan. 25, 2013) ("[T]he general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply where the latter party, with knowledge of the facts, either performs or indicates a willingness to do so, despite the breach, or insists that the defaulting party continue to render future performance." (quoting 14 *Williston on Contracts* § 43:15 (4th ed. 2004))).
[82] Defs.' Reply at 13.

16

obligations that have, thus far, been "avoided" by Kelly's failure to complete the Funds Transfer—but the Complaint does not seek an order compelling that future performance.[83] Agahi's Complaint also specifies that Agahi "and the Agahi Settling Parties remain ready, willing, and able to fully perform their obligations under the Settlement Agreement."[84] No court order is needed to mandate that performance in these circumstances.

## II.   Agahi has not Demonstrated Sole Entitlement to the Disputed Funds.

The Court now turns its attention to the merits of this case.

The standard on a Rule 12(b)(6) motion is not burdensome on a plaintiff. In this context, the court: (1) accepts all of the complaint's well-pled allegations as true; (2) credits even vague allegations, so long as they provide the opposing party notice of the claim; (3) gives the non-movant the benefit of all reasonable factual inferences; and (4) denies the motion if recovery on the claim is reasonably conceivable.[85]  "Dismissal is inappropriate unless 'under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted.'"[86]

---

[83] *See* Compl. ¶ 41; Prayer for Relief.
[84] Compl. ¶ 35.
[85] *Tilton v. Stila Styles, LLC*, 2023 WL 6134638, at *3 (Del. Super. Sept. 19, 2023) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).
[86] *Id.* at *3 (quoting *Unbound Partners Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021)).

As for a motion for summary judgment, the court's role is to determine whether genuine disputes of material fact exist.[87] If there are no such disputes and the movant is entitled to judgment as a matter of law, the court will grant summary judgment.[88] But if genuine factual disputes exist, or if further factual development is warranted, the motion will be denied.[89]

Kelly does not contest that he has not paid the $2.45 million he promised in the Agreement.[90] Kelly does, however, dispute that he owes Agahi all of that money.[91] This is because the Agreement contemplated the $2.45 million being allocated among the Unitholders—a group that includes, but is not limited to, Agahi.[92]

Agahi responds that the Agreement vested the Unitholders with the sole authority to determine how to allocate the $2.45 million.[93] He continues that the Unitholders, who apparently "have ties to one another," agreed that Agahi would initially receive the money and then distribute it to the other Unitholders.[94] Agahi thus avers that he is entitled to receive the full amount from Kelly, even though

---

[87] *Genworth Fin., Inc. v. AIG Specialty Ins. Co.*, 2023 WL 6160426, at *8 (Del. Super. Sept. 21, 2023) (citations omitted).
[88] *Id.*
[89] *Id.* (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).
[90] Tr. 37:14–16.
[91] *Id.* 72:15–16.
[92] Agreement § 1.
[93] Pl.'s Reply at 5–6.
[94] *Id.* at 6.

Agahi will not ultimately keep it all.[95] Agahi's allegations, though enough to withstand Kelly's Rule 12(b)(6) motion, do not entitle him to judgment.

### A. Agahi is not Entitled to Summary Judgment.

Summary judgment is only appropriate where no factual issues remain to be determined.[96] Here, there is an outstanding factual question. That is, whether the Unitholders actually designated Agahi as the initial recipient of the Held Funds. To date, Agahi has represented to the Court that the Unitholders did so, but he has provided no proof. The Court requires evidence.

The Court, in fact, already asked for evidence. In its January 9, 2024 communication, the Court requested a copy of the Unitholder's allocation agreement that Agahi relies upon.[97] Agahi's counsel responded that there is no written agreement and that the Unitholders "have an oral agreement and understanding concerning the allocation of the funds to be received under the Settlement Agreement."[98] Though the Court has no specific basis to doubt that representation, it will not, based on faith alone, award millions of dollars to a plaintiff purporting to be the representative of a group. Instead, "it seems prudent to make a more thorough inquiry into the facts."[99] Summary judgment is therefore denied.

---

[95] *Id.* at 3.
[96] *Genworth Fin.*, 2023 WL 6160426, at *8 (citing *Ebersole*, 180 A.2d at 470).
[97] Jan. 9, 2024 Correspondence (D.I. 25).
[98] Jan. 16, 2024 Correspondence (D.I. 26).
[99] *See Genworth Fin.*, 2023 WL 6160426, at *8.

19

The Court conceives at least two avenues by which Agahi can ease any doubt that the affected Unitholders actually granted the authority that Agahi now commands. Agahi could join the affected Unitholders in this action and permit them to represent their own interests, including by supporting Agahi's claim to individually receive the full amount of damages if they so choose. Or Agahi could submit documentation of the affected Unitholders' express consent, duly executed by each of them, confirming their amenability to Agahi receiving the full amount of damages from Kelly.[100] This is not meant as an exhaustive list of Agahi's potential sources of proof, but the Court notes that "a self-serving, conclusory affidavit alone is insufficient to justify summary judgment."[101] Until the Court is assured that Agahi is the proper recipient of any damages against Kelly, it cannot grant the relief sought.

---

[100] At this stage, the Court does not view all of the affected Unitholders as necessary parties under Rule 19(a). Under Rule 19(a), a person should be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Under either of those disjunctive prongs, the Unitholder's consent to Agahi initially receiving the funds would permit this case to move forward in their absence. If, however, the Unitholders do not so consent, that may trigger necessary joinder under Rule 19.

[101] *Wilson v. Metzger*, 2021 WL 2355230, at *1 (Del. Super. June 9, 2021) (ORDER) (citing *Abacus Sports Installations, Ltd. v. Casale Constr., LLC*, 2011 WL 5288866, at *2 (Del. Super. July 21, 2011)).

## B. This Conclusion does not Warrant Dismissal of the Complaint.

While Agahi has not *proven* his allegations sufficiently to have summary judgment awarded in his favor, he has *pled* his allegations well enough to avoid dismissal. The divergence in the standards applicable to those distinct procedural postures is on display here. As just discussed, a plaintiff must show that the facts are developed adequately and that no factual disputes exist before a plaintiff can be awarded summary judgment in its favor.[102] Conversely, a plaintiff can survive a motion to dismiss so long as it has a reasonably conceivable path to relief under any set of facts capable of proof.[103] Agahi carries the lesser of these two burdens.

Agahi has laid out the factual predicate for a valid breach of contract claim. The well-established elements for such a claim are: "(1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach."[104] No one disputes that the Agreement is a valid contract. Nor does anyone dispute that Kelly failed to pay his principal financial obligation under the contract. Although the amount is yet to be proven, it is plainly reasonable to infer that Agahi suffered damages as the result of Kelly's failure to pay. Agahi has thus stated a viable claim for breach of contract. What remains is for him to prove it.

---

[102] *See Genworth Fin.*, 2023 WL 6160426, at *8.

[103] *See Tilton*, 2023 WL 6134638, at *3.

[104] *Morris v. Delmarva Real Est. Hldgs., LLC*, 2024 WL 413512, at *5 (Del. Ch. Feb. 5, 2024) (citing *Intermec IP Corp. v. Transcore, LP*, 2021 WL 3620435, at *10 (Del. Super. Aug. 16, 2021)).

## CONCLUSION

In conclusion, Defendants' Motion to Dismiss is DENIED and Agahi's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

*/s/ Meghan A. Adams*

**Meghan A. Adams, Judge**