**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| RAPHAEL O. BROOKS, III, | ) | |
| | ) | C.A. No. N24C-10-440 FJJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOMINIC J. MAXWELL, CLAUDE B. | ) | |
| SMITH & PACE NEUROHEALTH | ) | |
| TMS CENTERS, INC. | ) | |
| Defendants. | ) | |

Submitted: April 8, 2025
Decided: April 15, 2025

## *ORDER*

*Upon Consideration of Defendants'*
*Motion to Dismiss Plaintiff's First Amended Complaint,*
**DENIED.**

## Facts and Procedural History

1. Plaintiff, Raphael Brooks, is the founder of Defendant-Corporation, Pace Neurohealth TMS Centers, Inc. ("Pace").[1]  On November 19, 2021, Plaintiff executed a Stock Purchase Agreement (hereinafter, "SPA") with Dominic Maxwell and Claude Smith (hereinafter, "Buyers").[2]  Each individual Buyer

---

[1] Docket Item ("D.I.") 7
[2] *Id.* ¶7.

1

agreed to purchase 50% of the outstanding common stock (hereinafter "Shares") from Plaintiff, totaling 100% of Shares in Pace.[3]

2. Plaintiff filed the Amended Complaint on December 30, 2024 asserting separate claims of Breach of Contract and Anticipatory Repudiation against the Individual Buyers (Counts I and II) and, in the alternative, claims of Unjust Enrichment Against the Buyers (Count VI) and Breach of Implied Covenant of Good Faith and Fair Dealing claim against Buyers (Count VII).[4] The Complaint also independently brought contractual claims against Pace (Counts IV and V).[5] Finally, Plaintiff asked the Court for Declaratory Judgment that all Defendants committed a Breach of Contract for Failing to Pay Rent (Count III).[6]

3. On February 28, 2025, Defendants filed the instant Motion to Dismiss.[7] Plaintiff responded in opposition on March 21, 2025.[8]

## **Standard of Review**

4. Superior Court Civil Rule 12(b)(1) allows the Court to dismiss a claim for lack of jurisdiction over the claim's subject matter.[9] In determining whether subject matter exists in a case, the Court "must view the factual allegations of the

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] D.I. 13.
[8] D.I. 15.
[9] Super. Ct. Civ. R. 12(b)(1).

2

complaint as true."[10]  "Dismissal is proper where a claim amounts to a 'purely equitable cause of action' because the 'Superior Court's jurisdiction lies in matters of law, as opposed to the Court of Chancery's jurisdiction, which lies in matters of equity.'"[11]

5. Rule 12(b)(6) allows the Court to dismiss for failure to state a claim upon which relief can be granted.[12]  While ruling on a motion to dismiss, this court:

> (1) accept[s] all well pleaded factual allegations as true, (2) accept[s] even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonable conceivable set of circumstances.[13]

## Analysis

### Subject Matter Jurisdiction Over Counts I, II, and III

6. The Superior Court does not have jurisdiction over claims seeking equitable relief. Rather, the Court of Chancery has jurisdiction over cases "request[ing] an equitable remedy when there is no adequate remedy at law."[14]  An "adequate remedy at law" allows the seeking party to recover "an award of damages [that] would be as complete, practical, and efficient to the ends of justice and its prompt administration as the equitable remedy."[15]  "Where 'money damages will suffice to remedy any

---

[10] *Prospect Street Energy, LLC v. Bhargava*, 2016 WL 446202, at *3 (Del. Super. Jan. 27, 2016).

[11] *Id.* (quoting *Dickerson v. Murray*, 2015 WL 447607, at *2-3 (Del. Super. Feb. 3, 205)).

[12] Super. Ct. Civ. R. 12(b)(6).

[13] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings*, 27 A.3d 531, 535 (Del. 2011).

[14] *Epic/Freedom, LLC v. Aveanna Healthcare, LLC*, 2021 WL 1049469, at *2 (Del. Ch. Mar. 19, 2021)(quoting *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017)).

[15] *Epic/Freedom, LLC*, 2021 WL 1049469, at *2 (quoting *Yu*, 2017 WL 2889515, at *2).

alleged breach to date, and declaratory relief will establish the proper [procedure]' for payment of damages, there is no need for equitable relief."[16]

7. Specific performance is an equitable remedy which this Court does not have jurisdiction over. Defendants argue Plaintiff, in Counts I, II, and III, seeks specific performance for Pace to tender the Deferred Payments under the SPA, and thus this Court must dismiss those claims.[17] In response, Plaintiff contends he is not asking for specific performance by the Buyers, but instead, is looking for the Buyers to compensate Plaintiff for their alleged breach of contract and anticipatory repudiation.[18]

8. Defendants argue that a contractual obligation involving payments requires specific performance, rather than legal damages, when a third party, such as an escrow agent, is holding the funds.[19] However, there is no evidence before the Court that suggests Pace is holding funds for the Buyers. Therefore, specific performance is not required to provide an adequate remedy. Legal damages are sufficient, and the Superior Court has subject matter jurisdiction over these claims.

---

[16] *Epic/Freedom, LLC*, 2021 WL 1049469, at *2 (quoting *Athene Life and Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *8 (Del. Ch. July 31, 2019)).

[17] D.I. 15 p.3-4.

[18] D.I. 13 ¶15.

[19] *See Carpenter v. Liberty Mut. Ins. Co.*, 2023 WL 3454692, at *3 (Del. Ch. May 15, 2023) (held specific performance over legal damages was not appropriate because the plaintiff asking the defendant-insurance company to "stack" the plaintiff's insurance policy was simply seeking funds from the insurance company); *Epic/Freedom, LLC*, 2021 WL 1049469, at *2-3 (held legal damages were an adequate remedy at law to satisfy the defendant's breach of contract, and further, the Court's declaratory relief properly enforced the timeframe and other requirements in paying legal damages to the plaintiff); *Sun Life Assurance Co. of Can. – U.S. Operations Holdings, Inc. v. Grp. One Thousand One*, 206 A.3d 261 (Del. Super. Ct. 2019) (held a demand for payment of a tax refund in accordance with the breach of a contractual obligation did not require specific performance, but rather money damages would provide the seeking party an adequate remedy at law).

4

9. To the extent Plaintiff requests specific performance for the Buyers to remove Plaintiff as a guarantor of the Judges Lane Office lease, Plaintiff voluntarily dismissed this portion of Count III because the lease ended on February 28, 2025. The Court **DENIES** dismissal of Count III.

### Individual Buyers' Obligations under Counts I and II

10. The Buyers argue the SPA did not obligate them to make the Deferred Payments or pay rent for the Judges Lane office.[20] Buyers point to SPA sections 2(c) and (d) claiming these sections place these duties with Pace.[21] Plaintiff contends these provisions do not absolve the Buyers of liability and makes several arguments to contend the contract should be interpreted as such.[22] First, Plaintiff suggests a facial reading of section 2(a) and the list of Pace's liabilities under Schedule(c) makes this clear.[23] In addition, Plaintiffs proffer to the Court the fact that the agreement is a stock *purchase* agreement rather than a stock *redemption* agreement is indicative that Plaintiff intended for the individual Buyers to pay for the stock rather than Pace as an entity.[24] Finally, Plaintiff argues the agreement would lack consideration if Pace was required to pay the purchase price because Pace would be getting nothing in return for payment.[25]

---

[20] D.I. 13 p.4-6.
[21] *Id.*
[22] D.I. 15 ¶8.
[23] *Id.* ¶¶9-10.
[24] *Id.* ¶11.
[25] *Id.* ¶12.

5

11. A facial reading of a contract is unambiguous and controlling when "they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[26] There is an ambiguity in a contract when "the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[27]

12. The SPA states, under section 2(a), "each *Buyer* hereby purchases from Seller, and Seller hereby sells, assigns, transfers, and sets over to each Buyer, its successors and assigns, all rights, title, and interests in and to the number of Shares set forth…" Section 2(d) states, "…*Pace* shall tender to Seller semi-annual payments (collectively, the "Deferred Payments")." Schedule(c) of the SPA lists Pace's "retained obligations" under the agreement.[28] The Deferred Payments are not one of those listed obligations. Section 10(c) requires *Buyers* to bear the responsibility to indemnify Plaintiff for losses incurred in response to a breach of the SPA.[29]

13. An upfront reading of the above SPA provisions does not make it clear to the Court whether the Buyers, Pace, or both owe the obligation to make the Deferred Payments

---

[26] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).
[27] *Id.*
[28] D.I. 7, Ex. A, §2(c), Schedule 2(c).
[29] *See Id.* §10(c) ["***Buyers*** shall indemnify and hold harmless Seller and its successors and assigns (each as "Indemnified Seller Party") from and against, and will pay to each Indemnified Seller Party the amount of, any and all Damages which any such Indemnified Seller Party incurs as a result of or in connection with (i) any inaccuracy in or breach of (or alleged inaccuracy in or breach of) any representation, warranty, covenant or agreement of either Buyer contained in this Agreement and/or the other Acquisition Documents, and/or (ii) the Retained Obligations."]

6

to the Plaintiff. Specifically, the Court is concerned with Pace's responsibility under section 2(d) to "tender" payments versus the individual Buyers' "purchase[]" of Shares. The Court finds this issue ambiguous and requires further discovery to tease out the interpretation.

The Court **DENIES** dismissal of Counts I and II.

### Pace's Obligations as a Signatory Under Counts IV and V

14. Defendants argue contractual claims cannot be brought against Pace because they are not a party to the contract and, therefore Plaintiff has no privity of contract with Pace.[30] In response, Plaintiffs point to Pace's status as a signatory to the contract, binding Pace to the agreement's terms.[31]

15. "As a matter of ordinary course, parties who sign contracts . . . are bound by the obligations that those documents contain."[32] Accordingly, as a signatory of the SPA, Pace is bound by the terms of the agreement.[33] In addition, Pace was clearly meant to be bound by the SPA considering the terms name Pace and grant the corporation several responsibilities.[34]

Therefore, this Court **DENIES** dismissal of Counts IV and V.

---

[30] D.I. 13 p.7.
[31] D.I. 15 ¶20.
[32] *Nationwide Emerging Managers, LLC v. NorthPointe Holdings, LLC.*, 112 A.3d 878, 891 (Del. 2015) (quoting *Official Comm. of Unsecured Motors Liquidation Co. v. JPMorgan Chase Bank, N.A.*, 103 A.3d 1010, 1015 (Del. 2014)).
[33] *See* D.I. 7, Ex. A. p.18.
[34] *See, e.g., Id.* §§2(c)-(d).

**Claim VI – Unjust Enrichment of the Individual Buyers**

16. An unjust enrichment claim is a quasi-contract claim brought in the alternative to a breach of contract claim. In other words, an unjust enrichment claim and breach of contract claim cannot be brought together under the same suit. Delaware Courts may allow the alternatively pled claims to proceed at the motion to dismiss stage.[35] The Courts tend to favor allowing both claims to proceed at the motion to dismiss stage when there is not a valid and enforceable agreement controlling the dispute.[36]

17. The Court will allow both claims to proceed at this stage because discovery is required to flesh out the agreement's interpretation. Therefore, there may not be an enforceable contract controlling the issue in dispute at this stage. The Court **DENIES** dismissal of Count VI.

**Claim VII – Individual Buyers' Breach of Implied Covenant of Good Faith and Fair Dealing**

18. A claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to allege "(1) a specific implied contractual obligation; 2) a breach of that obligation; and (3) resulting damages."[37] A breach of the implied covenant "cannot be based on conduct that the contract expressly addresses."[38] The party

---

[35] *CLP Toxicology, Inc. v. Casla Bio Holdings, LLC*, 2020 WL 3564622, at *21 (Del. Ch. June 29, 2020).
[36] *Id.*
[37] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *4 (Del. Super. June 27, 2016).
[38] *Id.*

bringing the implied covenant claim bears the burden of showing "that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expect."[39]

19. The law is clear that an implied covenant claim should not be invoked to reiterate conduct that is already central to a breach of contract claim. The claim should only be applied "when the contract is truly silent with the respect to the matter at hand, and . . . when . . . the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them."[40] "[M]erely repeating the defendant's allegedly improper acts or omissions already the subject of a breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing."[41]

20. Defendants contend the breach of implied covenant claim should be dismissed because the conduct Plaintiff bases his claim on are contractual obligations explicitly stated in the SPA and contemplated at the time of formation.[42] Plaintiff responds that individual Buyers breach the implied covenant by frustrating the purpose of the SPA.[43] If Pace is found to be solely responsible for payments under the SPA, then Plaintiff alleges the frustration is caused by a clear gap in the

---

[39] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1118 (Del. 2022)(quoting *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).
[40] *Allied Capital Corp. v. CG-Sun Holdings, L.P.*, 910 A.2d 1020, 1032-33 (Del. Ch. Nov. 22, 2006).
[41] *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016).
[42] D.I. 13 p.8-10.
[43] D.I. 15 ¶23.

agreement "depriving Brooks of SPA's benefit" because the SPA does not discuss Pace's inability to pay.[44]

21. A threshold determination required for an implied covenant analysis is to "engage in the process of contract construction to determine whether there is a gap that needs to be filled."[45] "[A] court determines whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill."[46] It is necessary to first conduct this examination because an implied covenant "cannot be invoked where the contract itself expressly covers the subject at issue."[47]

22. Considering this law and the SPA's ambiguity, the Court will allow this claim to proceed until discovery assists the Court in interpreting ambiguities in the agreement. Therefore, the Court **DENIES** dismissal of Count VII.

**IT IS SO ORDERED.**

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

cc:    _File&ServeXpress_
        Geoffrey A. Boylston, Esquire

---

[44] _Id._

[45] _Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC_, 302 A.3d 430, 458 (Del. Ch. Aug. 9, 2023) (quoting _Allen v. El paso PipelineGP Co., LLC_, 113 A.3d 167, 183 (Del. Ch. 2014), _aff'd_, 2015 WL 803053 (Del. Feb. 26, 2015)).

[46] _Cygnus Opportunity Fund, LLC_, 302 A.3d at 458 (quoting _NAMA Holdings, LLC v. Related WMC LLC_, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014)).

[47] _Cygnus Opportunity Fund, LLC_, 302 A.3d at 458 (quoting _Fisk Ventures, LLC v. Segal_, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008), _aff'd_, 984 A.2d 124 (Del. 2009)).

10

Phillip A. Giordano, Esquire
Patrick McGrory, Esquire